IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

CITIZENS ALLIANCE FOR          )
PROPERTY RIGHTS LEGAL FUND,    )
A Washington non-profit corporation,  )     No. 70606-3-I
                               )
        Appellant,             )
                               )
    v.                         )
                               )     ORDER GRANTING MOTION
SAN JUAN COUNTY, a Washington  )     TO PUBLISH
and the SAN JUAN COUNTY CRITICAL)
AREA ORDINANCE/SHORELINE       )
MASTER PROGRAM IMPLEMENTA-     )
TION COMMITTEE, a subcommittee )
of the San Juan County Council,  )
                               )
        Respondents.           )
_____)

Washington State Association of Municipal Attorneys filed a motion to publish the unpublished opinion filed in the above mater on April 28, 2014. The court called for an answer to the motion. Answers to the motion to publish was filed by the appellants, by Allied Daily Newspapers of Washington, and Washington Coalition for Open Government.

A majority of the panel has determined that the motion to publish should be granted. Now, therefore, it is hereby

ORDERED that the motion to publish the opinion is granted.

DATED this 10th day of _____June_____, 2014

_____
Presiding Judge


IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITIZENS ALLIANCE FOR PROPERTY RIGHTS LEGAL FUND, A Washington non-profit corporation, | ) ) ) ) | No. 70606-3-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| SAN JUAN COUNTY, a Washington and the SAN JUAN COUNTY CRITICAL AREA ORDINANCE/SHORELINE MASTER PROGRAM IMPLEMENTA- TION COMMITTEE, a subcommittee of the San Juan County Council, | ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: April 28, 2014 |

SPEARMAN, C.J. — The central issue in this case is whether members of the San Juan County Council (the Council) violated the Open Public Meetings Act (OPMA) by attending a series of closed meetings as part of a working group known as the San Juan County Critical Area Ordinance/Shoreline Master Program Implementation Committee (CAO Team).[1] Citizens Alliance for Property Rights Legal Fund (CAPR) appeals the trial court's summary judgment dismissal of its lawsuit against San Juan County (the County) and the CAO subcommittee,

---

[1] This group is referred to by several different names in the record, including CAO/SMP Implementation Committee, CAO/SMP Implementation Team, CAO Facilitation Group, and Pete's Implementation Team. For simplicity, it is referred to herein as the "CAO Team."

arguing that the trial court misinterpreted and misapplied several key provisions of OPMA and erroneously ruled that there were no genuine issues of material fact. Finding no error, we affirm.

## FACTS

In 2010, San Juan County began the process of updating its Critical Area Ordinances pursuant to the Growth Management Act, chapter 36.70A RCW. The CAO Team, which included members of the County executive staff as well as three of San Juan County's six councilmembers, was formed to facilitate and coordinate the County's efforts in this regard. The CAO Team did not open its meetings to the public.

In April 2012, San Juan County Prosecuting Attorney Randall Gaylord issued a memorandum advising the Council that "no meetings of three council members should occur without complying with the notice and other requirements of the Open Public Meetings laws." Clerk's Papers (CP) at 452. Gaylord acknowledged that the law in this regard is uncertain, but opined that "[e]ven if the law is not clear, the better approach is to err on the side of following the Open Public Meetings Act." CP at 452. The Council members followed Gaylord's advice and immediately discontinued this practice.[2]

Ten months later, the Council adopted four critical areas ordinances. Prior to adoption, the Council held approximately 75 public meetings to discuss the

---

[2] In November 2012, the voters of the County changed the Council from a six to a three member governing body, effective May 2013.

critical areas ordinance and provide opportunity for public comment. More than 30 of these meetings occurred after the CAO Team stopped meeting in April 2012.

In October 2012, CAPR filed a complaint against the County, the CAO Team, and Councilmembers Richard Fralick, Patty Miller, and Lovel Pratt, alleging that the CAO Team meetings violated the OPMA. CAPR requested (1) nullification of all actions taken in violation of OPMA; (2) civil penalties against each member that committed knowing violations of OPMA; (2) an award of costs and attorney fees; and (4) injunctions enjoining future violations of OPMA and the Growth Management Act. In an Amended Complaint filed in November 2012, CAPR non-suited its Growth Management Act injunction action, dismissed its claim against the individual Council members, and waived civil penalties.

The County moved for summary judgment, arguing that CAPR lacked sufficient evidence to support its case. CAPR submitted voluminous evidence in response.[3] In a letter decision, the trial court concluded that CAPR had failed to show that there was an issue of material fact regarding whether the CAO Team meetings violated the OPMA, and granted summary judgment to the County. The

---

[3] CAPR argues that the trial court should have treated the County's summary judgment motion as a motion for judgment on the pleadings under CR 12(c) because the County only attacked allegations in CAPR's complaint and failed to submit affidavits or identify portions of the record which demonstrate the absence of a genuine issue of material fact. This argument lacks merit. Even assuming for the sake of argument that the County's motion was functionally a motion for judgment on the pleadings, it was converted to a motion for summary judgment when CAPR submitted evidence in response. CR 12(c); P.E. Systems, LLC v. CPI Corp., 176 Wn.2d 198, 206, 289 P.3d 638 (2012). We also note that both parties had a reasonable opportunity to present materials relevant to a summary judgment motion within the CR 56(c) time for response.

trial court also denied CAPR's subsequent motion for reconsideration.[4] CAPR appeals.[5]

## DISCUSSION

This court reviews an appeal from summary judgment de novo. Bostains v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. Shoulberg v. Public Utility Dist. No. 1 of Jefferson Cy., 169 Wn.App. 173, 177, 280 P.3d 491 (2012), rev. denied, 175 Wn.2d 1024 (2012).

"[A] party moving for summary judgment can meet its burden by pointing out to the trial court that the nonmoving party lacks sufficient evidence to support its case." Guile v. Ballard Community Hosp., 70 Wn. App. 18, 21, 851 P.2d 689 (1993). "After the moving party meets its initial burden to show an absence of

---

[4] CAPR contends that the trial court erred in dismissing CAPR's complaint in its entirety, including its claims against the San Juan County Council's Budget Subcommittee, General Governance Subcommittee, and Solid Waste Subcommittee, because the County's motion for summary judgment only sought dismissal of allegations against the CAO Team. This argument lacks merit. CAPR's allegations and arguments focused solely on the CAO Team. CAPR made some passing references to the other subcommittees in its amended complaint and response to the County's motion for summary judgment, but did not name those subcommittees as defendants, include them in its claim for relief, or provide evidence and argument in support of its assertion that they violated OPMA.

[5] Allied Daily Newspapers of Washington, Washington Newspapers Publishers Association, and Washington Coalition for Open Government also filed an amicus brief.

material fact, the inquiry shifts to the party with the burden of proof at trial. . . ." West v. Thurston Cy., 169 Wn.App. 862, 866, 282 P.3d 1150 (2012) rev. denied, 176 Wn.2d 1012 (2013), citing Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff." Young, 112 Wn.2d at 225. "If, at this point, the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." Young, 112 Wn.2d at 225, quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## Email exchange

"[T]he OPMA is a comprehensive statute, the purpose of which is to ensure that governmental actions take place in public." Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1086 (9th Cir. 2003). OPMA contains a strongly worded statement of purpose: "The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly." RCW 42.30.010. The statute mandates liberal construction to further its policies and purpose. RCW 42.30.910.

To enforce OPMA's civil penalty provision, plaintiffs must show (1) that a member of a governing body (2) attended a meeting of that body (3) where action was taken in violation of OPMA and (4) the member had knowledge that the meeting violated OPMA. Wood v. Battle Ground Sch. Dist., 107 Wn. App. 500, 558, 27 P.3d 1208 (2001). Where, as here, plaintiffs are not seeking to enforce the civil penalties provision, the fourth factor is inapplicable.[6]

OPMA provides that "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter." RCW 42.30.030. A "governing body" is "the multimember board, commission, committee, council, or other policy or rule-making body of a public agency, or any committee thereof when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment." RCW 42.30.020(2). A "public agency" is "[a]ny county, city, school district, special purpose district, or other municipal corporation or political subdivision of the state of Washington." See RCW 42.30.020(1)(a). "Meeting" is defined as "meetings at

---

[6] There is some confusion in the case law regarding the proper standard to avoid summary judgment dismissal of an OPMA claim that does not involve civil penalties. In Eugster v. City of Spokane, 110 Wn. App. 212, 222, 39 P.3d 380 (2002), Division Three cited Wood in stating that "[to] defeat summary judgment dismissal of an OPMA claim, the plaintiff must submit evidence showing "(1) that a 'member' of a governing body (2) attended a 'meeting' of that body (3) where 'action' was taken in violation of the OPMA, and (4) that the member had 'knowledge' that the meeting violated OPMA." Wood, 107 Wn. App. at 558. However, the Wood court was specifically addressing a request to impose civil penalties under RCW 42.30.120(1), which requires a showing that the member knowingly violated OPMA. The other three remedies available under OPMA do not require proof of knowledge. See RCW 42.30.060(1) (nullification of action); RCW 42.30.120(2) (attorney fee award); RCW 42.30.130 (injunction). Thus, it is not appropriate to graft a knowledge requirement onto the test for overcoming summary judgment where civil penalties are not at issue.

which action is taken." See RCW 42.30.020(4). "Action" means "the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." See RCW 42.30.020(3).

Clearly, the Council is the "governing body" of a "public agency." However, under Washington case law, a gathering that includes less than a majority of the governing body does not violate OPMA. Wood, 107 Wn. App. at 564, citing In re Recall of Beasley, 128 Wn.2d 419, 427, 27 P.3d 878 (1996) and In re Recall of Roberts, 115 Wn.2d 551, 554, 799 P.2d 734 (1990). At all times relevant to this case, the Council had six members. Therefore, a gathering that includes three councilmembers does not constitute a "meeting" of the Council for OPMA purposes, regardless of whether "action" is taken.

CAPR contends that on November 14, 2011, four of six councilmembers held a "meeting" in violation of OPMA by participating in an email and telephone exchange in which they discussed CAO Team matters. The trial court properly rejected this argument, both on the merits and because CAPR first advanced the argument in its motion for reconsideration. "[T]he OPMA does not require the contemporaneous physical presence of [members of the governing body] in order to constitute a meeting." Eugster, 110 Wn. App. at 224. An exchange of emails can constitute a "meeting" for OPMA purposes. Wood, 107 Wn. App. at 564. However, "the mere use or passive receipt of e-mail does not automatically constitute a 'meeting.'" Wood, 107 Wn. App. at 564. Viewed in the light most

favorable to CAPR, the record shows that at most three councilmembers (Richard Fralick, Lovel Pratt, and Rich Peterson) participated in the active discussion of issues by phone or email. The fourth councilmember, Patty Miller, received a copy of the email, but there is no evidence that she responded or actively participated in the discussion.

CAPR also vaguely asserts that four Council members were present at other "meetings of the subcommittees" but fails to back up this claim with argument or citations to the record. We need not consider it. State v. Dennison, 115 Wn.2d 609, 629, 801 P.2d 193 (1990); RAP 10.3(a)(5).

## Negative Quorum

CAPR argues that this court should create a new rule and hold that a "meeting" occurs for the purposes of OPMA when the number of members present is sufficient to block action when the matter discussed comes up for a vote before the governing body, thereby constituting a "negative quorum." In support, CAPR cites a Wisconsin case, State ex rel. Newspapers, Inc. v. Showers, 135 Wis.2d 77, 398 N.W.2d 154 (1987). In Showers, four members of an eleven member body met to discuss budget measures. Showers, 135 Wis.2d at 80. Passing the budget measure required a two-thirds vote, meaning that eight out of eleven members had to approve the change. Id. The Wisconsin Supreme Court held that Wisconsin's Open Meeting Law applied because four members could block the parent body's course of action regarding the proposal discussed at the meeting by voting together. Id. at 80. Prior to May 2013, the Council had

six members, with at least four votes necessary to pass ordinances. Therefore, applying the reasoning of Showers, CAPR contends that a gathering of three councilmembers constitutes a "negative quorum" to which OPMA requirements should apply.

No Washington cases directly address the reasoning of the Showers case. San Juan County Prosecutor Randall Gaylord cited Showers in his April 2012 memorandum advising the Council that OPMA requirements should be followed when three of six councilmembers gather to discuss County business. Given the OPMA's mandate for liberal construction, this argument is not frivolous. Nevertheless, we decline to follow Showers. As an out-of-state case, it is not binding on this court. Moreover, it would carve out a significant exception to well-established Washington precedent holding that OPMA does not apply where a majority of the governing body is not present. See Beasley, 128 Wn.2d at 427 (in recall action, no meeting of majority of school board); Roberts, 115 Wn.2d at 554 (in recall action, no meeting of majority of town councilmembers). We also note that, effective May 2013, San Juan County voters reduced the size of the Council from six members to three, thereby eliminating the possibility that the negative quorum issue could arise again in San Juan County.

### Governing Body

CAPR next argues that it does not matter if a majority of the Council was not present at CAO Team meetings, because the CAO Team itself was a "governing body" subject to OPMA requirements. The term "governing body"

includes "the multimember board, commission, committee, council, or other policy or rule-making body of a public agency," as well as "any committee thereof when the committee acts of behalf of the governing body, conducts hearings, or takes testimony or public comment." RCW 42.30.020(2). According to CAPR, the CAO Team was a "governing body" because it was a "committee" of the Council that "acted on behalf of" the Council.[7] Therefore, CAPR contends that a "meeting" occurred for OPMA's purposes each time the CAO Team met and "acted on behalf of" the Council, regardless of how many councilmembers were present.

The OPMA does not define the phrase "acts on behalf of."[8] OPMA defines "action" as "the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." RCW 42.30.020(3). Applying common law principles of agency, amici argue that a committee "acts on behalf of" a governing body when it takes "action" as defined in RCW 42.30.020(3) on behalf of the principal and under the principal's control. CAPR and amici thus argue that the CAO Team "acted on

---

[7] Because CAPR did not allege that the CAO Team ever conducted hearings or took testimony or public comment, that portion of RCW 42.30.020(2) is not at issue.

[8] OPMA as originally passed in 1971 did not contain this phrase. The previous definition of "governing body" was "the multimember board, commission, committee, council, or other policy or rule-making body of a public agency." Former RCW 42.30.020 (1971). The statute was amended in 1983 to add the phrase "or any committee thereof when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment." RCW 42.30.020(3).

behalf of" the Council because it took "action" by conducting ordinance-related deliberations, discussions, considerations, and other business subject to the Council's control.

There is no Washington case law directly addressing the circumstances under which a committee "acts on behalf of" a governing body.[9] However, a 1986 Attorney General Opinion (AGO)[10] specifically analyzed this question. The AGO stated that there are two possible interpretations of the phrase "acts on behalf of." First, "a committee might act on behalf of the governing body whenever it performs a specified function in the interest of the governing body." AGO at 5. Under this broad definition, a committee would be subject to the OPMA whenever it meets and takes "action," just as governing bodies do. This is the interpretation CAPR and amici urge us to adopt. Second, "a committee might act on behalf of the governing body only when it exerts power or influence or produces an effect as the representative of the governing body." Id. Under this narrower definition, "a committee acts on behalf of the governing body only when it exercises actual or de facto decision making authority for the governing body." Id. This is the interpretation the County urges us to adopt.

---

[9] In Clark v. City of Lakewood, 259 F.3d 996, 1013 (9th Cir. 2001), the Ninth Circuit held that OPMA applied to a task force that took public testimony, held hearings, and acted on behalf of the governing body. The court concluded that these activities placed it "squarely within the ambit of RCW 42.30.020(2) without addressing the circumstances under which a committee "acts on behalf of" a governing body.

[10] AGO 1986 No. 16.

The AGO acknowledged that the statutory mandate for liberal construction supports the broad definition, but nevertheless concluded that "the narrower construction correctly reflects the intent of the legislature." Id. First, the AGO noted that the phrase "when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment" would be superfluous if all committees were subject to the OPMA. The AGO observed that if the legislature intended a broad interpretation of the phrase "acts on behalf of," it would have used the word "action" instead of "acts" and added the words "or any committee thereof" to the definition of "governing body," thereby subjecting a committee to the OPMA on the same basis as the governing body itself – when "action" is taken. Id. at 6. Second, the AGO carefully examined the legislative history of the 1983 amendments to the definition of "governing body," which suggest that the Legislature did not intend OPMA to apply to committees that "do nothing more than deliberate the making of policy or rules." AGO at 6.

> Mr. Isaacson: "What are the requirements with respect to giving formal notice?"
>
> Ms. Hine: "It's the intent of the legislation, we believe, subject to the deliberations of the governing body, that this apply only to deliberations of the governing body or subcommittees which the governing body specifically authorizes to act on its behalf, or which policy, testimony, or comments are made in its behalf. In other words, it's when making policy or rules, not for general comments or any kind of informal type meeting they may have. Those would not require the official formal notice. AGO at 7.

Thus, based on the narrower definition, the AGO concluded that "a committee acts on behalf of the governing body when it exercises actual or de facto decision making authority for the governing body. This is in contrast to the situation where the committee simple provides advice or information to the governing body." AGO at 7. Advisory committees would not be subject to OPMA. Id. at 8. We find the AGO persuasive, and adopt its reasoning.

CAPR and amici argue that the trial court erred in relying on Loeffelholz v. C.L.E.A.N., 119 Wn. App. 665, 82 P.3d 1199 (2004) and concluding that the CAO Team could not have "acted on behalf of" the Council because there is no evidence it had policy or rule making authority. In Loeffelholz, the plaintiff argued that election workers were a "governing body" because the county canvassing board delegated its authority to them. The court, citing Refai v. Central Washington Univ., 49 Wn. App. 1, 13, 742 P.2d 137 (1987), held that the election workers could not be a "governing body" unless they had "policy-making or rule-making authority." Loeffelholz, 119 Wn. App. at 704. According to CAPR and amici, Loeffelholz is incorrect because Refai was based on the old definition of "governing body," which was limited to a "board, commission, committee, council, or other policy or rule-making body of a public agency. . . ." Former RCW 42.30.020(2) (1983). The Refai court acknowledged in dicta that a "stronger case" can be made for advisory bodies to be subject to OPMA under the new definition of "governing body." Id. at 14, n.5. To the extent that a committee might exercise de facto decision making authority without being formally designated as

- 13 -

a policy or rule-making body, this argument does not lack merit. Ultimately, however, it is irrelevant, because the trial court correctly relied on the 1986 AGO and concluded there is no evidence that the CAO Committee exercised actual or de facto decision making authority.

First, CAPR submitted no admissible evidence that the Council created the CAO Team or delegated its decision making authority[11]. CAPR claims that the County's public participation plan proves that the Council created the CAO Team. This is incorrect. The plan merely includes a list of individuals responsible for establishing the CAO Team, including the County administrator, the County prosecutor, three members of the Council, and several other individuals. CAPR also points to the testimony of San Juan County Planning Coordinator Shireene Hale, who testified that the Council "would have created it." CP at 380. But the trial court properly granted the County's motion to strike this statement as hearsay, as there was no showing that she had personal knowledge to testify to this belief. Furthermore, Council member Lovel Pratt testified that the County Administrator created the CAO Team, and five Council Members submitted

---

[11] CAPR's assertion that the trial court "determined that the Council created the CAO Subcommittee" is plainly incorrect. Appellant's Reply Brief at 10. The trial court simply stated that it "can further assume, for the sake of argument, and without deciding, that the committee was established by the county council, as opposed to the county administrator. In point of fact, there appears to be no competent evidence in the record to indicate that the committee was established by the county council. . . ." CP at 818. The trial court then stated that its decision would be the same regardless of whether the council or the county administrator created the team.

declarations stating that they took no action to create the Team or to delegate authority to the Team.[12]

The trial court further concluded that even assuming for the sake of argument that the County could direct the CAO Team to act on its behalf, there is no evidence in the record indicating that it did so. CAPR contends that it did, pointing to County Prosecutor Randall Gaylord's memo, in which he stated that "[d]uring the course of committee meetings, ideas and policies are brought forward, discussed, narrowed and discarded and approaches are formulated for making presentations of subcommittee work to the entire Council." CP at 453. CAPR also cites County planner Shireene Hale's statement that "this group was trying to take care of some of the behind the scenes details so that the Council – the full Council could focus on making policy decisions and having substantive discussions and giving the staff direction on what they wanted to see." CP at 409. Even viewed in the light most favorable to CAPR, these statements do not provide evidence that the CAO Team exercised actual or de facto decision making authority. Rather, they describe an advisory or information role.

---

[12] CAPR contends that the trial court erred in granting the County's motion to strike Hale's statement and denying its motion to strike the declarations of the County Council members. We disagree. The County properly requested that the Court strike all inadmissible hearsay from CAPR's declarations, and Hale's statement was clearly hearsay. CAPR's assertion that the County's motion to strike was not timely is particularly unconvincing, where the record shows that CAPR requested and was granted a motion to shorten time in order to file its own motion to strike, and the court considered the County's motion to strike at the same time. VRP (4/19/2013) at 3-4. The trial court also properly denied CAPR's motion to strike the Council members' statements, as they did not conflict with previous testimony.

In sum, we adopt the reasoning of the 1986 AGO and hold that a committee "acts on behalf of" a governing body when it exercises actual or de facto decision making authority. Because CAPR submitted no evidence that a majority of the Council attended CAO Team gatherings or that the CAO Team exercised actual or de facto decision making authority, no "meeting" occurred for OPMA purposes, and summary judgment was appropriate. Because CAPR is not the prevailing party, it is not entitled to an award of attorney fees.

Affirmed.

Spearman, C.J.

WE CONCUR:

Leach, J.