IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARTHUR WEST, | No. 87686-4-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BURIEN CITY COUNCIL, CITY OF BURIEN, KEVIN SCHILLING, ALEX ANDRADE, LINDA AKEY, and STEPHANIE MORA, | |
| Respondents. | |

BUI, J. — Arthur West sued the City of Burien, the Burien City Council, and several of its individual members alleging a violation of Washington's Open Public Meetings Act of 1971 (OPMA), ch. 42.30 RCW. West appeals the summary judgment dismissal of his lawsuit and the trial court's order awarding attorney fees against him.

The trial court ruled, as a matter of law, the "press conference" at issue was not a meeting subject to the OPMA's notice requirements. Because this ruling is inconsistent with the broad terms of the statute, the trial court erred in dismissing West's lawsuit. We reverse the trial court's order of summary judgment, vacate its order awarding attorney fees and the judgment, and remand.

FACTS

The underlying events in this case involve a dispute between the City of Burien and King County. In March 2024, the Burien City Council passed

Ordinance 832, an anti-camping ordinance. The King County Sherriff's Office took the position that the ordinance was unconstitutional and refused to enforce it.

On April 25, 2024, Burien's mayor and Council member, Kevin Schilling, convened a "press conference" to address the impact of the County's decision. Four hours before the event, Mayor Schilling sent an e-mail message to 15 individuals affiliated with several media outlets, inviting them to attend. The subject line of the message was, "City of Burien Mayor, Councilmember, and Business Owner Press Conference." According to the Mayor's message, the purpose of gathering was to "discuss" the King County Sheriff's Office's refusal to enforce Burien's recently enacted ordinance in violation of the County's obligation under the interlocal agreement to provide law enforcement services to Burien. The announcement stated local business owners would speak about loss of revenue and property damage related to encampments in Burien's business district and participants would be "discussing next steps that we see as a community." According to the e-mail, "Mayor Schilling, Councilmembers . . . business owners impacted by encampments" would be in attendance.

At the appointed time, the Mayor and three other council members convened with members of the press, business owners, and others at the Burien City Hall.[1] At the outset, Mayor Schilling made a statement at the podium, asserting the County was "usurping" the council's legislative authority and urging the County to "come to the table" to negotiate the dispute. The Mayor then invited

---

[1] The declarations of the mayor and the three council members state the location was the library. Ultimately, the location is not crucial to the issue on appeal.

several community members and business owners to describe their experiences and share their concerns about the lack of enforcement of the camping ban. Finally, the Mayor and other participants responded to questions from the press. At least two local media outlets recorded the conference, which lasted approximately 35 minutes.[2]

The next day, Arthur West, representing himself, filed a lawsuit against the City of Burien, the Burien City Council, and individual council members (collectively, the City). West's complaint alleged the City violated the OPMA because four council members, a quorum, met and took action on official council business without providing proper notice and posting an agenda, as required by the statute.[3] West sought declaratory judgment, the assessment of civil penalties, fees, and costs.[4] See RCW 42.30.030(1) (authorizing $500 civil penalty against an individual member of a governmental body who knowingly violates the OPMA); RCW 42.30.120(4) (a person who prevails against a public agency in a

---

[2] The record includes two recorded versions of the press conference, a longer version with a KING 5 News logo that appears to be unedited, but omits the first minute, KING 5 SEATTLE, Burien Businesses Speak Out on Camping Ban Enforcement, (YouTube, Apr. 25, 2024) https://www.youtube.com/watch?v-yuD1cgblOfo, and a shorter, apparently edited version, with a South King Media logo, South King Media, Mayor Kevin Schilling Press Conference Burien City Hall, (YouTube, April 25, 2024) https://youtube.com/watch?v=-DPLoDtuevM.

[3] City of Burien residents voted in 1992 to incorporate as a noncharter code city under a council-manager form of government. See https://www.burienwa.gov/news_events/city_news room/news_announcements/celebrating_30th_anniversary_of_incorporation. The City is governed by a seven-member city council and the council selects the mayor and deputy mayor from among its members. See https://www.burienwa.gov/city_hall/city_council; see also RCW 35A.13.010 (size of council for noncharter or charter code city that elects a mayor-council form of government depends on the number of residents; council consists of seven members if residents exceed 2,500).

[4] Four former Burien council members filed a motion to intervene in the lawsuit, but the court did not rule on the motion as it was not noted for a hearing. West later submitted declarations of the former council members, each expressing the opinion that the April 25, 2024 event was a meeting subject to the OPMA, in support of reconsideration.

claim under the OPMA "shall be awarded all costs, including reasonable attorneys' fees").

The City filed a motion for summary judgment. The City argued there was no quorum of council at the April 25 event because one council member, Alex Andrade, attended solely in her personal capacity as a small business owner and another, Linda Akey, attended for only 15 minutes. Even if there was a quorum, the City claimed council members did not collectively intend to meet and transact "official business" or receive public testimony. Accordingly, the City argued, as a matter of law, the press conference was not subject to the requirements of the OPMA.

In response, West argued (1) the label "press conference" was not dispositive, (2) the City's interpretation of the OPMA was overly narrow, and (3) the discussion about the ordinance and the City's authority to exercise its police powers was related to official City business. West also moved to strike declaration testimony submitted by the City (from the mayor and Council members Andrade and Akey) and requested CR 11 sanctions. West identified a discrepancy between Council member Akey's testimony and video footage showing she was present for nearly the entire event. In response, the City acknowledged that Akey underestimated the duration of her attendance but claimed there was no basis to strike or for sanctions because West did not challenge Akey's declaration in his opposition to the City's motion for summary judgment.

At the hearing on the City's motion, the trial court orally denied the motion to strike and for sanctions. After considering the arguments of both parties, the court granted the City's motion for summary judgment and entered an order dismissing West's complaint with prejudice.

The City then moved for attorney fees under RCW 42.30,120(4), which provides for fees under the frivolous lawsuit statute, RCW 4.84.185, when a public agency prevails on an OPMA claim and the lawsuit is "frivolous and advanced without reasonable cause." The City characterized West as a "serial litigant" and asserted the lawsuit was "contrary to all relevant authority" and without evidentiary support.

West sought reconsideration of the ruling on summary judgment and opposed the motion for attorney fees. West also resubmitted his motion to strike and for sanctions related to the council members' declarations supporting the City's motion. The trial court denied reconsideration and West's requests for sanctions, and granted the City's request for attorney fees, finding West's lawsuit was "frivolous and advanced without reasonable cause."

West moved to reconsider the order awarding fees. He also filed a declaration pointing to the City's passage of an amended anti-camping ordinance in January 2025 as new evidence that the discussion at the April 25, 2024 event was related to evolving issues likely to come before the council, and did, in fact, come before the council again, and not solely related to prior, completed council business. The trial court declined to reconsider the award of attorney fees.

After the City provided the amount of its request and billing records, West objected to the amount, $49,909.50, as excessive. The trial court applied a modest reduction to the fees requested by the City and awarded fees in the amount of $48,804.50.

West timely appealed.

ANALYSIS

West challenges the trial court's order granting summary judgment in favor of the City and its orders awarding fees against him. The Washington Coalition for Open Government has filed amicus briefing in support of West's challenge to the trial court's award of fees.

Standard of Review

We review a summary judgment ruling de novo. Martin v. Gonzaga Univ., 191 Wn.2d 712, 722, 425 P.3d 837 (2018). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing a summary judgment order, this court engages in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. Lunsford v. Saberhagen Holdings, Inc., 166 Wn.2d 264, 270, 208 P.3d 1092 (2009). On review, this court does not weigh evidence, assess credibility, consider the likelihood that the evidence will prove true, or otherwise resolve issues of material fact. TracFone, Inc. v. City of Renton, 30 Wn. App. 2d 870, 876, 547 P.3d 902, review denied, 3 Wn. 3d 1030, 559 P.3d 494 (2024).

6

We review a trial court's decision on a motion to strike for an abuse of discretion. Farmer v. Davis, 161 Wn. App. 420, 431, 250 P.3d 138 (2011). And we review an attorney fee award, based on a determination of frivolousness under RCW 4.84.185, for abuse of discretion. Curhan v. Chelan County, 156 Wn. App. 30, 37, 230 P.3d 1083 (2010). A court abuses its discretion when its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

OPMA

West claims the trial court erred in ruling, as a matter of law, the City did not violate the OPMA. According to West, because a majority of the council gathered and took "action" under the OPMA on April 25, 2024, the City was required to comply with the statute's notice requirements. See RCW 42.30.020(3) (defining "action"); RCW 42.30.080 (providing notice and timing requirements for special meetings).

The OPMA is "Washington's comprehensive transparency statute." Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 434, 395 P.3d 1031 (2017). "OPMA contains a strongly worded statement of purpose: 'The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.' " Citizens Alliance for Prop.

Rts. Legal Fund v. San Juan County, 181 Wn. App. 538, 543, 326 P.3d 730 (2014) (quoting RCW 42.30.010). To achieve this goal, the OPMA requires, with few exceptions, "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency." RCW 42.30.030.

Our courts construe the OPMA liberally to accomplish its purpose. Eugster v. City of Spokane, 110 Wn. App. 212, 222, 39 P.3d 380 (2002); RCW 42.30.910 ("The purposes of this chapter are hereby declared remedial and shall be liberally construed."). Remedies for violating the OPMA include mandamus or injunction as provided in RCW 42.30.130, voidance of actions as provided in RCW 42.30.060, and recoupment of costs and reasonable attorney fees as provided in RCW 42.30.120(4). Zink v. City of Mesa, 17 Wn. App. 2d 701, 707-08, 487 P.3d 902 (2021).

"In construing statutes, we seek to effectuate the legislative intent, which we discern 'from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation.' " Wood v. Battle Ground Sch. Dist., 107 Wn. App. 550, 558, 27 P.3d 1208 (2001) (quoting Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue, 106 Wn.2d 391, 401, 722 P.2d 787 (1986)). We "construe a statute 'so that all the language used is given effect, with no portion rendered meaningless or superfluous.' " Seattle City Light v. Swanson, 193 Wn. App. 795, 810, 373 P.3d 342 (2016) (internal quotation marks omitted) (quoting Rapid Settlements, Ltd., v. Symetra Life Ins. Co., 134 Wn. App. 329, 332, 139 P.3d 411 (2006)). Statutory construction is informed by common sense and we

strive to avoid absurd results. <u>Linville v. Dep't of Ret. Sys.</u>, 11 Wn. App. 2d 316, 321, 452 P.3d 1269 (2019).

A "meeting" is subject to the OPMA when a majority of the governing body meets and takes "action." <u>Citizens Alliance</u>, 184 Wn.2d 428,442-43, 359 P.3d 753 (2015) (quoting RCW 42.30.020(4)). However, "the OPMA does not actually define what a 'meeting' itself is." <u>Citizens Alliance</u>, 184 Wn.2d at 443. Relying on <u>Black's Law Dictionary</u> 1131 (10th ed. 2014) as a "useful definition" in the context of governing entities, our Supreme Court determined that, for a gathering to be a meeting, its purpose must be "to discuss or act on matters" in which the attendees have a "common interest" relating to "the official business of the governing body." <u>Citizens Alliance</u>, 184 Wn.2d at 443. And the OPMA expressly defines "action" as "the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." RCW 42.30.020(3). The statute allows governing bodies to travel together or gather for purposes other than regular or special meetings, so long as they "take no action" as defined in the statute. RCW 42.30.070.

To prevail on a claim for civil penalties under RCW 42.30.120(1), West was required to show "(1) that a member of a governing body (2) attended a meeting of that body (3) where action was taken in violation of OPMA and (4) the member had knowledge that the meeting violated OPMA." <u>Citizens Alliance</u>, 181 Wn. App. at 543-44. For purposes of his claims for declaratory judgment and costs, West needed only to establish the first three elements. <u>See</u> <u>Eugster</u>, 110

Wn. App. at 226 ("while the knowledge element is required to impose the civil penalty, it is not a necessary element for recovering attorney fees"); Citizens Alliance, 181 Wn. App. at 544 n.6 ("it is not appropriate to graft a knowledge requirement onto the test for overcoming summary judgment where civil penalties are not at issue.").

West contends the trial court erred in concluding there was no meeting subject to the OPMA when the evidence demonstrated a quorum of council (1) physically gathered, (2) engaged in discussion about an ordinance involving the exercise of municipal police powers, and (3) received public testimony. We agree.

The City does not dispute that a majority of the council was present on April 25, 2024. But, according to the City, because the event was a "press conference" intended to publicize an issue of concern to the community, it was not a "meeting" under the OPMA. The City further claims the council took no "action" on April 25 because council members did not directly discuss issues with each other. And while the discussion touched on the City's ordinance, because the council had already voted on that measure, the City argues it did not transact official council business by discussing the ordinance after the fact. The City also maintains the council did not receive "public testimony" for purposes of the statute because council members merely passively received information. And finally, the City contends there was no meeting or action because council members lacked the "collective intent to deliberate and/or discuss" any council business. See Wood, 107 Wn. App. at 566.

The statute does not suggest designating the event as a "press conference" precludes application of the OPMA. It is evident from the statements of the mayor and others that the event was intended to publicize the impasse with the County and influence the County to change its position on the enforcement of the anti-camping ordinance passed by the council. Notwithstanding that unmistakable purpose, to determine if the council took "action," within the meaning of the OPMA, the statute directs us to consider whether the circumstances fell within the "transaction of the official business" of [the council]. RCW 42.30.020(3). The City's contention that it did not transact official council business by gathering with the press and members of the public to encourage the County to negotiate and advocate for implementation of its ordinance appears to be an unduly restrictive reading of the statute.[5] See Eugster, 110 Wn. App. at 222; RCW 42.30.910.

Although the statute does not mention collectively publicizing, advocating, or encouraging cooperation with its legislative efforts, the OPMA "expansively" defines "action" and its list of examples of how a governing body may take action is expressly non-exclusive. Egan v. City of Seattle, 14 Wn. App.2d 594, 614, 471 P.3d 899 (2020). The City acknowledges a governing body may take action by engaging in "discussion." And here, the Mayor specifically described the April 25 event as a forum for "discussion" about the County's stance, its obligations, and

---

[5] According to the City, courts in other jurisdictions have "uniformly" concluded that press conferences are not meetings that violate open meeting laws. However, the City cites only a case construing an Ohio public meeting law with different, narrower language, see Holeski v. Lawrence, 85 Ohio App. 3d 824 (1993), abrogated on other grounds by Ames v. Rootstown Township Bd of Trustees, 2019-Ohio-5412, and a case construing an Alabama public meeting law that generally excludes press conferences, see Swindle v. Remington, 291 So.3d 439 (Ala. Sup. Ct. 2019). These authorities do not aid our interpretation of the statutory language at issue.

the "next steps" to address the situation. The meeting included substantive exchanges, primarily between members of the press and the Mayor, with additional input from business owners and another council member. There was specific discussion about whether the City might end the standoff by reverting to the law that Ordinance 832 replaced. And the City did eventually adopt a revised ordinance. Nothing in the statute limits "discussion" to scenarios where all members of the governing body who are present contribute or requires members to directly address each other. And the evidence supports an inference that the council engaged in discussion that informed later decision-making. See, e.g., 2006 Op. Att'y Gen. No. 6, at 2,[6] (the OPMA applies to deliberation or discussion of issues a governing body may eventually decide).

The City also claims the council did not take action by receiving "public testimony" within the meaning of the OPMA because community members addressed their comments only to the press. And, relying on Wood, 107 Wn. App. at 566, and City of Seattle v. Kaseburg, 13 Wn. App.2d 322. 467 P.3d 115 (2018), the City claims the OPMA required council members to do more than hear public comments in order to take action by the receipt of public testimony. But neither Wood nor Kaseburg involved analogous facts or addressed the receipt of public testimony. Wood involved the question of whether communications may constitute a meeting under the OPMA without physical presence. Wood, 107 Wn. App. at 556, 565-66 (e-mail exchanges involving a quorum of the Board relating to "Board business" were prima facie evidence that

---

[6] https://www.atg.gov/ago-opinions/applicability-open-public-meetings-act-when-quorum-members-governing-body-are-present.

a meeting occurred). And in <u>Kaseburg</u>, we determined contact by e-mail between individual council members and members of the community did not constitute a meeting of council. <u>Kaseburg</u>, 13 Wn. App. 2d at 334.

In discussing the OPMA's applicability, this court in both cases distinguished active exchanges of information from mere "passive receipt" of information. <u>Citizens Alliance</u>, 184 Wn.2d at 444; <u>Wood</u>, 107 Wn. App. at 566. But the factual context of electronic communications and other "one-way forms of communication" was critical to that distinction. <u>Citizens Alliance</u>, 184 Wn.2d at 444. The distinction is relevant to electronic communications which may be widely disseminated and can be received without being read or considered. On the other hand, our courts have not addressed the receipt of "public testimony" under RCW 42.30.020(3) or discussed the factual aspects that may be relevant. In short, no authority supports the position that a governing body does not take action by receiving public testimony when a majority of its members are physically present when community members give public statements on the subject of legislation enacted by that body.

Finally, pointing to the declarations in the record of three of the council members present on April 25, the City claims it is "undisputed" that the council lacked the requisite intent to meet and conduct official council business. According to Mayor Schilling:

> I did not intend for the press conference to be a public meeting or a City Council meeting. I similarly did not intend to transact any official City business at the press conference. The purpose of the press conference was to speak to the press about the King County Sheriff's Office's decision not to enforce Burien Ordinance No. 832, which Ordinance the City Council already had adopted. Thus, any City Council action related to this issue

already had been completed the month prior and the intent of the press conference was to ask the King County Sheriff's Office to take action consistent with the City Council's ordinance.

Council member Andrade maintained she attended, "as an affected Burien business owner and member and representative of the Spanish speaking businesses and community" and her only communication about the event was with Mayor Schilling, who "let [her] know there would be a press conference." Similarly, Council member Akey said Mayor Schilling "told [her] there would be a press conference . . . to allow Burien business owners to voice their concerns about King County's refusal to enforce Burien laws to the media." She denied participation in planning the event.

These declarations do not dispel the evidence that a quorum of the council intended to gather in one place to discuss and publicize the County's response to Burien's legislation and hear community members' concerns. Mayor Schilling's declaration merely states the basis for his opinion that the gathering he initiated was not subject to the requirements of the OPMA. The declarations, together with the invitation to the press and video footage, create a reasonable inference that council members intended to meet collectively, were present as council members (even if they attended in more than one capacity), and were apprised that the event was related to the official council business.

In sum, because the evidence was sufficient to support West's claim of a violation of the OPMA and the City failed to establish an entitlement to judgment as a matter of law, we reverse the order granting summary judgment. As the award of attorney fees was premised on the summary judgment dismissal of West's lawsuit, we also vacate the order awarding attorney fees and judgment.

Although we reverse the trial court's order on other grounds, we exercise our discretion to address West's challenge to the denial of his motion to strike the council members' declarations supporting the City's motion for summary judgment. It appears reasonably likely the issue will arise on remand because the challenged declarations may be relevant to knowledge and whether the civil penalties West seeks under RCW 43.20.120(1) are appropriate. See McFarland v. Tompkins, 34 Wn. App.2d 280, 320-21, 567 P.3d 1128 (2025) (genuine issues of material fact existed as to knowledge, despite declarations of each board member denying knowledge, because of circumstantial evidence in the record contradicting the claimed lack of knowledge).

West argues the court was required to strike Council member Akey's declaration because her statement about the duration of her attendance was untruthful, as evidenced by video footage. West similarly claims the video footage contradicts some of the declaration testimony of Council members Andrade and Mayor Schilling. But these arguments go to the weight and persuasiveness of the declarations, not their admissibility.

West relies on Beckman v. Dep't of Social & Health Servs., 102 Wn. App. 687, 11 P.3d 313 (2000), and In re Pers. Restraint of Fero, 190 Wn2d 1, 409 P.3d 214 (2018). Beckman involved the application of RAP 18.8, authorizing an extension of time to file a notice of appeal in "extraordinary circumstances." Beckman, 102 Wn. App. at 693. Fero involved collateral review of a criminal conviction and whether declarations addressing changes in the medical community's understanding of head trauma would probably change the result of

trial and qualify as newly discovered evidence. Fero, 190 Wn.2d at 17, 22. Neither case holds or suggests the trial court must strike declaration testimony that is arguably inconsistent with other evidence. We discern no abuse of the trial court's discretion in its evidentiary ruling.

Attorney Fees on Appeal

The City seeks attorney fees on appeal citing RCW 42.30.120(4) and RAP 18.9, arguing West's appeal is frivolous and sanctionable. West prevails on appeal as to the two primary issues he raised. We deny the City's request for attorney fees.

Conclusion

We reverse the order on summary judgment, vacate the order awarding attorney fees and the judgment awarding attorney fees, and remand for further proceedings.

_Bur, J._

WE CONCUR:

_Feldman, J._            _Coburn, J._