
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| R.L. MCFARLAND, an individual, | ) | No. 40158-8-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY A. TOMPKINS, an individual | ) | |
| and member of the Walla Walla County | ) | |
| Board of Commissioners, TODD L. | ) | PUBLISHED OPINION |
| KIMBALL, an individual and member of | ) | |
| the Walla Walla County Board of | ) | |
| Commissioners, and JENNIFER R. | ) | |
| MAYBERRY, an individual, and member | ) | |
| Walla Walla County Board of | ) | |
| Commissioners and COUNTY OF | ) | |
| WALLA WALLA, STATE OF | ) | |
| WASHINGTON, a municipal corporation. | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — This appeal poses many interesting questions attended to

Washington's Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW, one of

Washington's sunshine laws. The questions cover the subjects of standing, mootness,

proper parties, laches, notice given for a government body special meeting, remedies,

nullification of government action, and personal liability of members of the governing

body. Two difficult questions are: (1) does a citizen possess standing, under

RCW 42.30.060 and .080, to void action taken by the board of a government body in

violation of the OPMA, and (2) whether and how a plaintiff, under RCW 42.30.120,

may defeat a summary judgment motion brought by board members to dismiss the claim of individual liability when the members deny knowledge of a violation of the OPMA. The many issues raised by the parties prolong this opinion.

R.L. McFarland sued Walla Walla County and individual Walla Walla County Board of Commissioners (WWBOC or the Board) members for an alleged failure to give advance notice of possible action taken during a special board meeting on January 7, 2021. The superior court held, in response to cross motions for summary judgment, that the county violated the OPMA. The superior court, however, granted summary judgment dismissal of McFarland's lawsuit against both Walla Walla County and board members because McFarland lacked standing to sue the county, the county is not a proper party, the suit is moot, McFarland unreasonably delayed filing suit, and the three members of the WWBOC averred that they lacked actual knowledge of violating the act, a prerequisite to personal liability. We reverse the superior court and remand the claims against both the county and the board members.

In briefing, the parties implicitly advocate their respective political and scientific positions regarding the COVID-19 contagion and government restrictions taken in response to the pandemic. R.L. McFarland perceived the pandemic as an acute and abundant danger to community health, and he supported measures taken by Governor Jay Inslee to combat the pandemic. The three WWBOC members may have recognized COVID-19 as real and needful of government measures to prevent the virus' spread, but

the board members objected to measures ordered by Governor Inslee, particularly orders that treated Walla Walla County the same as more populous counties. As a result, the WWBOC approved at a special meeting a letter to Governor Inslee and state legislators advocating for restraints on the governor's powers. As will be explained further in our analysis of mootness of the appeal, we do not consider this appeal to concern the validity or utility of government programs addressing the COVID-19 pandemic. We would issue the same ruling, based on the OPMA, if the WWBOC had written letters to the Washington governor and to state legislators that advocated for and praised the measures taken by the governor.

FACTS

In January 2021, a three-member board of county commissioners governed Walla Walla County. The three members were Greg Tompkins, Todd Kimball, and Jennifer Mayberry. Tompkins served as chairman of the board. Appellant R.L. McFarland resides in Walla Walla County.

Walla Walla County, named for the Walla Walla tribe of Native Americans, lies on the western edge of fecund Palouse country in southeast Washington, with Benton County to the west, Franklin County to the northwest, Colombia County to the east, and Whitman County to the northeast. The Snake River forms most of the boundary with Franklin County. The winding river empties into the Columbia River at the northwest corner of Walla Walla County. The mighty Columbia River flows on the west end of the

county and forms the boundary with Benton County. The southern boundary of the county is the state of Oregon. The foothills of the Blue Mountains form in the southeast corner of Walla Walla County.

The city of Walla Walla is Walla Walla County's seat and largest city. The county contains 1,299 square miles, and its population numbered 62,584 in 2020. Walla Walla County markets high-end wines. The county houses two premier higher education institutions, Walla Walla University and Whitman College. The county is affectionately known worldwide for its redundant name that alliterates with Washington and for sweet onions.

OPMA requires that members of a governing body of a public agency, including county commissioners, undergo training to ensure compliance with the demands of the OPMA. Discovery in this suit disclosed that each individual WWBOC member underwent formal training on the act before 2021. The training included the act's requirements for notice given for special board meetings.

In opposition to COVID-19 pandemic restrictions imposed by Washington Governor Jay Inslee, the group We of Liberty lobbied for legislation limiting the power of the governor. WWBOC Chairman Gregory Tompkins received an e-mail from We of Liberty enlisting a letter of support for the group's efforts. Chairman Tompkins discussed authoring a letter of support during the WWBOC's regularly scheduled meeting on January 4, 2021:

CHAIRMAN TOMPKINS:  I received an e-mail from Liberty. . . .. [T]hey are hosting a . . .  rally in Olympia next week, or the 10th . . . . to discuss some of the powers of the governor and also the vaccination, that would prohibit the discrimination of individuals who choose not to receive the COVID-19 vaccine, and then the other one is to limit the governor without legislative authority to just impose these types of restrictions.  I don't know if you—if you've seen it, Commissioner Kimball.  I know that Commissioner Mayberry has not, unless Diane forwarded it to her. . . . .  But they're looking for a support letter, you know, to send to our Reps [state legislators]. . . .  I, personally, think that it's not a bad thing for us to do, you know, that there should be some additional conversation if a pandemic like this ever came to fruition again.

So I'm just looking for your thoughts, see if we have consensus to draft a letter and send it to our legislators supporting their actions.

COMMISSIONER KIMBALL: Yeah, I have that letter . . .  and I do support . . .  what they're recommending.  I just think the power of one person to be able to do what he's been doing for the last nine months without any oversight of any kind is a little too much power in the hands of one person.  So I support writing a letter so we can get some legislation and that let's our legislators have some say in this.  So I'm fine with drafting a letter.

CHAIRMAN TOMPKINS: Okay.  Commissioner Mayberry, any thoughts?

COMMISSIONER MAYBERRY: I'm a hundred percent for it, so—

CHAIRMAN TOMPKINS: So in the e-mail, they were only talking about individual's rights not to get it, but I think they need to include businesses, you know, to not require employees to get it, if they so choose not to, and that should be a business decision by an employer.  So I'd like to add that to that letter.

COMMISSIONER KIMBALL: I'm fine with that.
COMMISSIONER MAYBERRY: I agree.
CHAIRMAN TOMPKINS: Okay.  All right.

Clerk's Papers (CP) at 93-94.  The superior court found that, based on this discussion, the

WWBOC had "agreed" to send a letter.

5

On January 5, 2021, Governor Jay Inslee unveiled "Healthy Washington —

Roadmap to Recovery," a phased COVID-19 recovery plan restricting retail, religious,

personal, and professional services to 25 percent capacity. The plan limited outdoor

entertainment venues, including zoos and concert spaces, to ten persons. The plan

mandated facial coverings and physical distancing.

On January 5, 2021, the WWBOC posted notice of a special Thursday, January 7,

2021, board meeting with the following succinct agenda:

> a) Roll call and establish a quorum
> b) Pledge of Allegiance
> c) Executive session: re: litigation or potential litigation
> (pursuant to RCW 42.30.110(i))
> d) Miscellaneous business to come before the Board.

CP at 122. According to Walla Walla County, the WWBOC sought guidance from legal

counsel for potential responses to the emergent unveiling of the governor's roadmap.

The WWBOC sent the special meeting notice to R.L. McFarland.

On January 6, 2021, R.L. McFarland e-mailed Diane Harris, WWBOC clerk,

seeking to clarify if the board would discuss, at the scheduled special meeting, the

proposed letters discussed during the January 4 regular meeting, under the agenda item

"Miscellaneous business to come before the Board." CP at 126. The e-mail noted that

Thursday meetings were "normally reserved for 'Executive Session' topics." CP at 132.

Harris responded that she did not know the topic for discussion under the agenda item of

miscellaneous business.

Walla Walla County writes in its brief that Clerk Diane Harris's response to R.L. McFarland's e-mail, which response mentioned a lack of knowledge of the topic for miscellaneous business, confirms that the WWBOC lacked any preexisting plan to address, at the January 7 special meeting, the topic of a letter supporting We of Liberty. The citations to the clerk's papers, given by Walla Walla County, do not confirm the county's factual assertion.

Later on January 6, 2021, WWBOC Chairman Gregory A. Tompkins replied to R.L. McFarland's January 5 e-mail:

> I think there is a misnomer and more likely a communication error on my part when explaining intent of the letter going to our State legislators and others. There is no intent on behalf of the Board of County Commissioners (BOCC) to write a letter supporting someone else's agenda or protest. The letter is to let the legislature and others know that we are watching and that people's Civil liberties are being trampled on which flies in the face of what this county was founded on and what the ACLU so strongly represents. "Know your rights—Everyone has basic rights under the U.S. Constitution and civil rights laws."
>
> The BBOC is simply requesting the legislature pass legislation to: Limit the Governor's powers that would require him to get legislative support when mandating restrictions and not executing decisions solely on his own. Limiting the Governor's powers is a balance of power. This is not an extreme ask for our Legislature to pass a Bill because part of the current RCW already requires legislative support. . . .
>
> We are also asking Legislature to pass a bill prohibiting the discrimination of individuals and/or businesses who choose not to receive the Covid-19 Vaccine.
>
> As you may have seen the Governor rolled out his new plan-called Healthy Washington yesterday, placing every jurisdiction back to Phase 1. This regionalization plan was implemented with zero discussion among County/City elected officials. Local Health departments etc. . . .[sic] and

> will further degrade peoples['] Civil Liberties, Mental and Physical Health, livelihoods and have permanent lasting effects that some will never recover.

CP at 128. Chairman Tompkins' e-mail did not indicate whether or not the WWBOC would discuss the proposed letter about COVID-19 measures during its January 7 special meeting.

On January 7, 2021, during the special meeting, the WWBOC engaged in a lengthy executive session that excluded attendance by the public. After returning to an open meeting, the Board reviewed a proposed letter regarding the governor's powers. The WWBOC unanimously approved drafting a letter to Governor Inslee that opposed the reopening protocols embedded in the Healthy Washington Roadmap to Recovery plan. R.L. McFarland virtually attended the Board meeting.

Although the letter shows a date of January 7, the WWBOC sent its letter to Washington Governor Jay Inslee on January 8, 2021. All three commission members signed the letter. The letter emphasized the efforts already exerted by Walla Walla County to combat the pandemic and advocated for eliminating arbitrary regional designations. The letter lamented Walla Walla County being wedded to COVID-19 rates suffered by larger counties, such as Yakima County, Franklin County, and Benton County.

On January 12, 2021, the WWBOC sent letters to Senator Perry Dozier, Representative Skyler Rude, and Representative Mark Klicker, criticizing the Roadmap

to Recovery as fundamentally flawed in its design and implementation. The three legislators then represented Walla Walla County in the state legislature. We henceforth refer to the letter to Governor Inslee and the letter to state legislators as "the January letters."

Ten months later, on November 12, 2021, Michael de Grasse, legal counsel for R.L. McFarland, sent a letter to Chief Civil Deputy Prosecuting Attorney for Walla Walla County, Jesse Nolte. DeGrasse's letter began a paper clash between de Grasse and Nolte on the question of whether the WWBOC violated the OPMA when resolving to send the letters to Governor Inslee and the Walla Walla legislative representatives. DeGrasse emphasized that the January 7 agenda had not specified the proposed action of sending the letter. The letter asked if the Board would rescind the resolutions approving the sending of the January letters.

The letters and e-mail between Michael deGrasse and Jesse Nolte continued until June 2022. Nolte's letters denied any violation because the approval of the January letters did not constitute an "action" under the OPMA. The content of the letters lacks importance because we repeat later arguments asserted by both sides in the correspondence. Nevertheless, the letters detail attempts by McFarland, through his counsel, to resolve the dispute without litigation and, in turn, the letters may explain a delay in filing suit. In letters, each attorney suggested the other attorney had failed to read previous correspondence. DeGrasse sent e-mail or letters on November 12, 2021,

February 24, 2022, March 4, 2022, March 18, 2022, March 31, 2022, April 14, 2022, May 16, 2022, and June 2, 2022. Nolte sent correspondence on December 21, 2021, February 28, 2022, March 7, 2022, March 22, 2022, April 4, 2022, and April 14, 2022. On July 25, 2022, de Grasse mailed a copy of a complaint and summons to Nolte and announced an intent to file suit if the Board did not resolve the dispute by Labor Day.

Greg Tompkins left office on December 31, 2022. *See* Hon. Cathy McMorris Rodgers of Washington in the House of Representatives, *Recognizing County Commissioner Greg Tompkins*, 168 CONG. REC. 187 (Dec. 2, 2022).

PROCEDURE

On September 23, 2022, R.L. McFarland filed suit against Walla Walla County and Walla Walla County Commissioners Gregory Tompkins, Todd Kimball, and Jennifer Mayberry. When referencing all defendants, we will henceforth label them as "the defense." The complaint alleged violations of the OPMA because the notice for the January 7, 2021, special meeting failed to specify the business to be conducted. McFarland argued that actions taken during the meeting jeopardized his health by encouraging the state government to relax COVID-19 safeguards. Although McFarland did not allege that Tompkins, Kimball, or Mayberry had constructive or actual knowledge of any OPMA violations, the complaint sought civil penalties and attorney fees under RCW 42.30.120. McFarland further requested nullification of the January 7 letter to Governor Inslee and the January 12 letter to Senator Perry Dozier and Representatives

10

Mark Klicker and Skylar Rude. McFarland deemed Walla Walla County a necessary

party because he sought a ruling declaring the January 7, 2021 decision to send the letters

void.

In its answer, the defense pled the affirmative defenses of lack of standing,

mootness, estoppel, waiver, and laches. The defense did not plead the statute of

limitations.

The parties brought cross-motions for summary judgment. In support of his

motion, R.L. McFarland filed an affidavit, in which he declared that the board members

knowingly violated the OPMA. McFarland mentioned that he contacted the WWBOC in

advance of the January 7 meeting and warned that the agenda for the special meeting did

not mention the potential for approving a letter. McFarland pledged to donate, to Walla

Walla County, any civil penalty imposed on the board members.

Board members Greg Tompkins, Todd Kimball, and Jennifer Mayberry

respectively signed declarations supporting the defense's summary judgment motion.

Each declaration reads identically as to the board member's state of mind on January 7,

2021:

> At the time of the meeting, it was my good faith belief that the
> special meeting that took place on January 7, 2021, comported with the
> requirements of the Open Public Meetings Act.
> At the time of the meeting, it was my good faith belief that my
> actions at the special meeting that took place on January 7, 2021,
> comported with the requirements of the Open Public Meetings Act.

11

CP at 359.

The superior court initially granted summary judgment in favor of R.L. McFarland. The court ruled that R.L. McFarland had standing to sue and that the notice for the January 7, 2021, special meeting violated the OPMA. The superior court denied the defense's motion, but the court reserved for a later trial the defenses of laches and mootness and the question of whether the individual county commissioners knowingly violated the OPMA.

The superior court thereafter granted a motion for reconsideration from the defense. The court dismissed R.L. McFarland's claims in their entirety with prejudice after concluding that no genuine issues of material fact existed. In turn, the superior court ruled that: (1) the WWBOC's January 5 notice for the January 7, 2021 meeting violated RCW 42.30.080 because the notice insufficiently described the business to be transacted at the special meeting, (2) McFarland lacked standing against Walla Walla County to pursue nullification of the decision to send the January 7 letter, (3) McFarland had standing to sue the individual county commissioners for a civil penalty arising from a violation of the OPMA, (4) McFarland presented no evidence that the individual commissioners knowingly violated the OPMA during the January 7 meeting, (5) McFarland unreasonably delayed his lawsuit and this delay materially changed the conditions faced by the county commissioners, (6) laches barred the suit, and (7) no justiciable controversy existed.

LAW AND ANALYSIS

On appeal, R.L. McFarland assigns error to the superior court's grant of summary judgment to the defense and to the court's denial of his summary judgment motion. These assignments of error necessarily challenge the superior court's rulings that McFarland lacked standing to bring an OPMA claim against the county, that Walla Walla County is not a proper defendant, that laches barred McFarland's suit, that McFarland's request for relief is moot, and that, under the undisputed facts, the individual members of the WWBOC knew not of any violation of the act. The defense does not appeal the superior court's ruling that Walla Walla County violated the OPMA by its Board of Commissioners taking action during the January 7 special meeting without proper notice in its advance agenda.

Despite the defense choosing not to appeal the superior court's declaration of a violation of the OPMA, we briefly review the provisions of the act. Our opinion focuses, however, on the many procedures defense raised beginning with standing.

Standing

We surmise that the defense agrees that R.L. McFarland possesses standing to sue the individual board members for a civil penalty as a result of an OPMA violation. The defense instead aims its argument of lack of standing at McFarland's request against Walla Walla County for a declaration proclaiming the January 2021 letters null under RCW 42.30.060 and .080. Thus, we will later entertain the appeal of the denial of the

request for the civil penalty without addressing standing. We conclude, after reading

OPMA statutes, reviewing Washington decisions, recognizing the value of open

government, and acknowledging the statutory directive to liberally construe the act, R.L.

McFarland possesses standing to nullify the January letters.

A cause of action of a plaintiff who lacks standing cannot be resolved on the

merits and must fail. *Trinity Universal Insurance Company of Kansas v. Ohio Casualty*

*Insurance Company*, 176 Wn. App. 185, 199, 312 P.3d 976 (2013). Questions of

standing under Washington law begin with the statutes themselves. *Grant County Fire*

*Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004).

We later quote sections of the OPMA that impose requirements on a public agency

board to give notice of meetings. For now, we recite sections of the act that govern who

enjoys standing for various claims under the act. We then analyze the language of these

statutes before perusing case law.

The Open Public Meetings Act declares that "the people . . . do not yield their

sovereignty," and they "insist on remaining informed." RCW 42.30.010. The act

instructs courts to construe its provisions liberally. RCW 42.30.910. The OPMA

demands that, with few exceptions, all meetings of the governing body of a public agency

be open and public and all persons be permitted to attend any meeting of the governing

body of a public agency. RCW 42.30.030. RCW 42.30.080 requires advance notice of

an agenda for a special meeting. Remedies for violation of the OPMA include

mandamus or injunction as provided in RCW 42.30.130, voidance of actions as provided in RCW 42.30.060, and recoupment of costs and reasonable attorney fees as provided in RCW 42.30.120(4). *Zink v. City of Mesa*, 17 Wn. App. 2d 701, 707-08, 487 P.3d 902 (2021).

RCW 42.30.060(1), under which R.L. McFarland in part sues, declares any action, taken at a meeting in violation of the OPMA, as not only null, but also void. The statutory subsection reads:

> No governing body of a public agency shall adopt any ordinance, resolution, rule, regulation, order, or directive, except in a meeting open to the public and then only at a meeting, the date of which is fixed by law or rule, or at a meeting of which notice has been given according to the provisions of this chapter. Any action taken at meetings failing to comply with the provisions of this subsection shall be *null and void*.

(Emphasis added.) Grammarians consider the two words "null" and "void" to convey different meanings. "Null" means to annul or cancel, while "void" means invalid or worthless. We consider the words redundant in our setting.

RCW 42.30.060(1) references no mechanism for declaring an action null or void. The statute does not declare who possesses standing to render an action void.

Two other OPMA statutes confer standing on "any person." First, RCW 42.30.130 declares with respect to mandamus or an injunction:

> Any person may commence an action either by mandamus or injunction for the purpose of stopping violation or preventing threatened violations of this chapter by members of the governing body.

15

R.L. McFarland did not seek a writ of mandamus or injunction. We must resolve whether RCW 42.30.130's bestowal of standing on "any person" suggests that the legislature meant to deny any person standing to sue for a declaration of nullity because RCW 42.30.060(1) lacks the phrase "any person."

Second, RCW 42.30.120 affords "any person" the right to seek civil penalties against a board member who knowingly violates the OPMA. The statute reads, in relevant part:

> (3) The civil penalty shall be assessed by a judge of the superior court and *an action to enforce this penalty may be brought by any person. . . .*
> (4) *Any person* who prevails against a public agency *in any action* in the courts for *a violation of this chapter* shall be awarded all costs, including reasonable attorneys' fees, incurred in connection with such legal action.

(Emphasis added.) RCW 42.30.120(3), like RCW 42.30.060(1) and unlike RCW 42.30.130, expressly bequeaths standing on "any person" to claim the civil penalty, again suggesting that the absence of such language in the latter statute withholds standing, to sue to declare an action null and void, from any person, including R.L. McFarland. Nevertheless, RCW 42.30.130 does not define "person" or expressly limit the people eligible to bring claims under other sections of the act. *West v. Seattle Port Commission*, 194 Wn. App. 821, 827, 380 P.3d 82 (2016).

RCW 42.30.120(4) inserts the phrase "any person" into the OPMA fee-shifting provision favoring a prevailing plaintiff. The remedy applies to any person prevailing

against a public agency for a violation of any section of the OPMA.  RCW 42.30.060, requiring an advance agenda for a special meeting, could be such a section.  On the one hand, RCW 42.30.060(4) may suggest that any person has standing to sue for any violation of the chapter.  On the other hand, subsection (4) might otherwise assume that the public lacks standing for a declaration action and such member of the public will lose and not recover attorney fees.

We turn to decisional law.  In *Lopp v. Peninsula School District No. 401*, 90 Wn.2d 754, 757, 585 P.2d 801 (1978), the Washington State Supreme Court pronounced that RCW 42.30.130 "allows anyone standing to challenge the validity of a governing body's action."  The Supreme Court did not directly address the question of standing, but rather affirmed dismissal of the OPMA action on the defense of laches.

The only Supreme Court decision analyzing OPMA standing is *Kirk v. Pierce County Fire Protection District No. 21*, 95 Wn.2d 769, 630 P.2d 930 (1981).  Robert Kirk sued under RCW 42.30.060 and .080, like R.L. McFarland, to void an agency action.  The Pierce County Fire Protection District No. 21 Board of Commissioners had failed to provide notice of a special meeting to one of its commissioners.  RCW 42.30.080 demands notice to a board member twenty-four hours in advance of the special meeting.  A board member can waive the requirement, however.  At the special meeting, the fire commissioners terminated the employment of Kirk as fire chief.  The Supreme Court ruled that only the aggrieved commissioner, who did not receive proper notice, had

standing to raise the issue. Because the commissioner waived notice, the Supreme Court reversed the superior court's ruling in favor of Kirk.

Thirty-five years later this intermediate court decided *West v. Seattle Port Commission*, 194 Wn. App. 821 (2016). Frequent government gadfly Arthur West sued two port district commissions and their respective board members for a series of confidential meetings that allegedly violated RCW 42.30.030's demand that all meetings of the governing body of a public agency be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency. West sought a declaratory judgment under Washington's declaratory judgment act, chapter 7.24 RCW, and civil penalties against board members under the OPMA. The opinion does not disclose the nature of the declaratory order sought by West.

On the basis of *Kirk v. Pierce County Fire Protection District No. 21*, the superior court ruled, in *West v. Seattle Port Commission*, that Arthur West lacked standing. On appeal, West argued that, because of Washington courts' broad interpretation of the OPMA, he enjoyed standing as "any person" to bring an action under RCW 42.30.120 and RCW 42.30.130. This court agreed because the plain statutory language of RCW 42.30.120 and .130 confers standing on "any person" to bring a claim for sanctions or an injunction. The court, however, approved the confidential nature of the meetings because a federal act directed confidential meetings on the subject of shipping.

In ruling that Arthur West held standing, this court distinguished *Kirk* because the Supreme Court in *Kirk* did not address the statutory causes of action established under RCW 42.30.120 and .130. Robert Kirk's suit entailed improper notice to a specific person. Kirk did not assert that anyone, including himself, was prohibited from attending the meeting. West's suit involved his exclusion from a meeting.

In *West v. Seattle Port Commission*, this court characterized standing under the OPMA as "very broad." 194 Wn. App., 821, 826 (2016). The act does not limit standing to any person. The act encompasses no requirement that a person seeking standing must show a particular injury or satisfy a rigorous standing test. The court emphasized that a permissive standing requirement coincided with the legislature's declaration that "the people . . . do not yield their sovereignty" and "insist on remaining informed" and the OPMA's instruction to construe the statute liberally. RCW 42.30.010, .910. In contrast, *Kirk* addressed the narrower issue of whether a petitioner could void an agency action based on the failure to provide notice to a board member of a special meeting.

In *West v. Seattle Port Commission*, the court wrote:

> Although the OPMA declares that "[a]ny action taken at meetings failing to comply with [chapter 42.30 RCW] shall be null and void" it does not authorize individual people to annul or invalidate those actions. RCW 42.30.060(1).

194 Wn. App. 826, 828 (2016). The court wrote as if the standing conferred on "any person" under RCW 42.30.120 and .130 extended to West's entire action, which included

19

declaratory relief. Nevertheless, the court declined to directly address whether West possessed standing for his claim under the Uniform Declaratory Judgments Act because West did not appeal dismissal of his request for declaratory relief.

One year later this court decided *West v. Pierce County Council*, 197 Wn. App. 895, 391 P.3d 592 (2017). This time Arthur West sued the Pierce County Council and members of the council. He alleged council members violated RCW 42.30.120 and .130 based on a series of e-mails between members and the Pierce County Prosecuting Attorney's Office. The county council argued that the *Kirk* decision imposed standing requirements on every OPMA claim. The superior court ruled that West lacked standing to bring action under the OPMA. West appealed to this court, which reversed the standing ruling but affirmed dismissal on the merits of the claims.

On appeal, Arthur West argued that, because of Washington courts' broad interpretation of the OPMA, he enjoyed standing as "any person" to bring an action under RCW 42.30.130. The county council requested this court ignore the earlier *West* decision because the earlier decision flouted Supreme Court precedent. This court agreed with West because the plain language of the OPMA confers standing on "any person." The county council failed to recognize that *Kirk* did not address the specific statutory language in RCW 42.30.120 and .130.

This court, in *West v. Pierce County Council*, referred to standing under the OPMA as a whole, but did not address standing specifically under RCW 42.30.060 or

20

.080. The court observed that the OPMA creates two specific causes of action for violations of the act: civil penalties and injunctions. The court did not mention an action to invalidate measures taken by an agency without proper notice.

As with this court in the two Arthur West decisions, we reject the applicability of *Kirk v. Pierce County Fire Protection District No. 21*, 95 Wn.2d 769 (1981), to R.L. McFarland's appeal. Robert Kirk challenged the validity of action taken at a special meeting because the fire district failed to give notice to a board member as required by RCW 42.30.080. Nevertheless, the board member, the only beneficiary of the statutory provision, did not object to the convening of the meeting or the action taken during the special meeting. Instead, the member waived notice. The Supreme Court reasonably concluded that only the board member possessed standing to enforce that OPMA provision. Generally, one must be protected by the provision of a statute to gain standing to sue for a violation of the provision. *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 303, 268 P.3d 892 (2011); *Center for Biological Diversity v. Department of Fish & Wildlife*, 14 Wn. App. 2d 945, 980, 474 P.3d 1107 (2020). RCW 42.30.080's demand to give advance notice to a board member seeks to protect a board member, not the general public. RCW 42.30.080's requirement of a list of agenda items seeks to protect the citizenry as a whole, including R.L. McFarland.

The OPMA expresses a strong intent for open government, including the public gaining knowledge of an agenda in advance of a special meeting. In many instances,

members of the governing board of the public agency will not complain about a special meeting notice that fails to list agenda subjects. In this appeal, none of the board members objected to any violation of the OPMA. Under Walla Walla County's position, many violations of rules governing special meetings would go unremedied if no one other than board members possesses standing.

RCW 42.30.130(4) references "any person" who prevails against a "public agency." The law does not impose civil penalties on the public agency so "any person" must have standing to sue for violations beyond the civil penalty. The standing conferred by subsection (4) could refer only to an action for an injunction or mandamus as sanctioned by RCW 42.30.130, which again expressly grants standing to any person. We question, however, whether the legislature had such a sophisticated analysis when ruminating about standing under the OPMA. Since the legislature intended a liberal reading of the act, we can discern no reason why the legislature would permit standing to any person bringing an injunction to preclude a violation but not permit standing to any person who seeks to enforce the provision declaring actions null and void for violations.

In construing statutes, we ascertain and effectuate the legislature's intent. *State v. Keller*, 2 Wn.3d 887, 910, 545 P.3d 790 (2024). If the statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. *Department of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 43 P.3d 4 (2002). Neither RCW 42.30.060 nor .080 denies a member of the public standing to declare void

22

an action taken by a public body at a special meeting when the advance agenda failed to list the subject matter.

We also glean the plain meaning of a statute by considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *Association of Washington Spirits & Wine Distributors v. Liquor Control Board*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015). Although other related statutes, unlike RCW 42.30.060, mention standing for "any person," the OPMA as a whole seeks sunshine on government action and desires Washington citizens to beckon the dawn for government action. The OPMA recognizes that citizens insist on remaining informed and informing the people's public servants of their views so that they may retain control over the instruments they have created. RCW 42.30.010. The requirements for a special meeting notice permit citizens in advance to learn of the topics to be discussed and be prepared to advocate their interests with regard to those topics. A court should adopt the more reasonable interpretation of a statute. *State v. T.E.C.*, 122 Wn. App. 9, 27, 92 P.3d 263 (2004). Allowing a public citizen to enforce the requirement of a detailed agenda for a special meeting appeals to reason, as opposed to allowing the violation to go unremedied.

In *Organization to Preserve Agricultural Lands v. Adams County*, 128 Wn.2d 869, 913 P.2d 793 (1996), an advocacy organization sued Adams County under the OPMA. The organization sought to nullify a permit issued for a waste site because two members

of the county commission had discussed the issuance of the permit outside the confines of an open meeting.  The Supreme Court held that no violation occurred.  Although the Supreme Court did not address the standing of the plaintiff to invalidate the county action, the court did not suggest the organization lacked standing.

Walla Walla County may contend that R.L. McFarland should particularly be denied standing because he attended the January 7, 2021 special meeting of the WWBOC.  Under this argument, McFarland should not complain about any defect in the notice when he otherwise attended the meeting.  The county may highlight that, in *Kirk v. Pierce County Fire Protection District No. 21*, 95 Wn.2d 769 (1981), the Supreme Court underscored that the lack of notice to one fire commissioner did not preclude Robert Kirk from attending the meeting.  We reject such an argument as contravening the importance of the OPMA.  Despite specifically asking, McFarland still lacked knowledge that the WWBOC would address the proposed January letters until the Board began to discuss the letters during the special meeting.  We do not know what other steps McFarland might have taken if Walla Walla County had extended him advance notice.  Among other steps, he may have rallied other opponents of the letters to attend.  Regardless, the OPMA does not deny standing to a private citizen who attended a meeting that violated the act.

## Proper Party

We already addressed whether R.L. McFarland is the proper plaintiff to sue Walla Walla County for a violation of the OPMA.  We now address the converse question.

24

Walla Walla County contends it is not a proper defendant for R.L. McFarland's suit. Nevertheless, despite the distinction between the two concepts, Walla Walla County conflates the two issues. In essence, Walla Walla County contends that it is not a proper defendant because McFarland lacks standing to sue. We have already ruled that McFarland possesses standing to seek nullification of action taken by Walla Walla County, through its Board of County Commissioners, in violation of special meeting rules. Because the board members acted on behalf of Walla Walla County and the resolution authorizing the sending of the letters was an official act on behalf of the county, Walla Walla County is a proper defendant to the claim seeking nullification.

Under CR 19, an entity is a necessary party if it holds an interest relating to the subject matter of the action. *Burt v. Department of Corrections*, 168 Wn.2d 828, 833, 231 P.3d 191 (2010). Walla Walla County possesses an interest in the question of whether a court voids one of its official acts.

R.L. McFarland contends that he may join Walla Walla County as a defendant to his cause of action seeking civil penalties against county commissioners. We need not address this contention, because we have already ruled that the county is a proper defendant for another cause of action.

Mootness

The defense next asserts the defense of mootness. The defense mentions that Governor Jay Inslee has departed office and Chairman Greg Tompkins has retired from

office.  More importantly, the defense highlights the absence of a current dispute over the policy matters underlying this action.  Also, according to Walla Walla County, it cannot recall letters already sent.  R.L. McFarland denies the appeal to be moot, but also asks that we decide the case even if we find it moot because of the public importance of the issue.

The law instructs to address mootness, in addition to standing, before considering the merits of a case.  *Citizens for Financially Responsible Government v. City of Spokane*, 99 Wn.2d 350, 662 P.2d 845 (1983); *Rosling v. Seattle Building & Construction Trades Council*, 62 Wn.2d 905, 907-08, 385 P.2d 29 (1963).  We must dismiss a moot issue.  *State v. Deskins*, 180 Wn.2d 68, 80, 322 P.3d 780 (2014).  A case is moot if it involves "only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief."  *Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005); *Housing Authority v. Pleasant*, 126 Wn. App. 382, 387, 109 P.3d 422 (2005).  The dispute must rest on existing facts or rights.  *Hansen v. West Coast Wholesale Drug Co.*, 47 Wn.2d 825, 827, 289 P.2d 718 (1955).

A major flaw impedes the defense's assertion of mootness.  The defense fails to recognize the nature of R.L. McFarland's suit.  In his complaint, McFarland alleges that the WWBOC action endangered his health.  But McFarland's suit does not challenge any policy adopted or policy statement of the WWBOC based on the content of the policy.

McFarland sues because the WWBOC allegedly violated the OPMA. The issue before this court is not whether Governor Inslee handled the pandemic well or poorly. This appeal does not ask us to resolve whether the WWBOC justifiably criticized the plan adopted by Governor Inslee as to its broad inclusiveness and because of its potential harm to Walla Walla County. Scientists and historians can debate for years the utility of measures taken by government officials in combatting the spread of the COVID-19 virus. The issue on appeal, although important, is narrower. The question is whether the WWBOC violated the OPMA.

The defense may concede that the question of civil penalties is not moot. Indeed, the question of whether board members must pay civil penalties for a knowing violation of the OPMA abides regardless of the ending of the COVID-19 pandemic. The request to nullify the resolution approving the January letters and the letters themselves also remains active. The question of whether WWBOC violated the law by failing to provide adequate notice for its special meeting remains in dispute no matter who sits in office. The superior court or this court on appeal may nullify the resolution approving the January letters regardless of the previous sending the letters. This appeal would be moot only if Walla Walla County had recalled the letters, agreed that it violated the OPMA, and the board members paid the penalties.

The defense does not explain how the inability to retrieve the sent letters precludes the nullification of the resolution adopting the letters. R.L. McFarland asks for a voiding

27

of the letters but does not disclose what, if any, further action he seeks assuming this court nullifies the resolution. Conceivably, a court could order that the WWBOC contact the addressees of the letter and inform the recipients that the court declared the resolution authorizing the letters void such that the letters should not have been sent. If an addressee no longer remains in office, the court might direct the WWBOC to send the notification to his or her successor. On remand, we direct the superior court, after advocacy from the parties, to determine the remedy to be entered. Regardless, a nullification of the resolution still vindicates the purposes and dictates of the OPMA.

*Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89 (2005) assists in resolving the defense's claim of mootness. The defense fund sued the city under the Public Disclosure Act (PDA), another sunshine measure demanding government transparency. On appeal, the city of Spokane asked for dismissal because the city had since sent the fund the records sought. The Washington Supreme Court disagreed. The merits of a PDA claim must be determined based on the circumstances existing at the time of the request. Subsequent disclosure of the documents did not affect the judicial proceeding. The PDA's mandatory fees, costs, and sanctions provide for relief even after the records are disclosed. OPMA provides for similar relief.

Laches

The defense argues that R.L. McFarland unreasonably delayed the filing of his suit to their prejudice. McFarland filed suit on September 23, 2022, 624 days after the

28

January 7, 2021 WWBOC meeting. The defense also emphasizes that ten months elapsed before McFarland's counsel contacted the Walla Walla County Prosecuting Attorney's Office. The superior court agreed with the defense and ruled that laches bars all of the claims of McFarland. We disagree. We conclude that, even if McFarland unreasonably delayed suit, the defense shows no prejudice, a prerequisite to laches.

Laches functions as an implied waiver arising from the claimant's knowledge of existing conditions and acquiescence in them during the passing of time. *Buell v. City of Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972). The burden of proof lies with the party asserting the defense of laches. *Rutter v. Rutter*, 59 Wn.2d 781, 785, 370 P.2d 862 (1962). A party asserting the defense of laches bears the burden to prove: (1) knowledge or reasonable opportunity to discover on the part of a plaintiff that he or she has a cause of action against a defendant, (2) an unreasonable delay by the plaintiff in commencing that cause of action, and (3) damage to the defendant resulting from the unreasonable delay. *King County v. Taxpayers of King County*, 133 Wn.2d 584, 642, 949 P.2d 1260 (1997). Damage to a defendant can arise either from acquiescence in the act about which plaintiff complains or from a change of conditions. *Lopp v. Peninsula School District No. 401*, 90 Wn.2d 754, 759-60 (1978).

Prejudice to the defendant forms the critical element in laches. Laches is an extraordinary defense appropriately applied only when the condition of the other party has in good faith become so changed that the party cannot be restored to his or her former

29

state. *Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 435, 754 P.2d 120 (1988).

Laches, as an extraordinary remedy to prevent injustice and hardship, should not be

employed as an artificial excuse for denying a litigant that which in equity and good

conscience he is fairly entitled to receive, when the assertion of the claim, though tardy,

has not prejudiced anyone. *Crodle v. Dodge*, 99 Wash. 121, 168 P. 986 (1917). The

court will not presume prejudice merely from the fact of a delay. *Clark County Public

Utility District No. 1 v. Wilkinson*, 139 Wn.2d 840, 848, 991 P.2d 1161 (2000).

Generally, prejudice for purposes of laches depends on the particular facts and

circumstances of each case. *Schrock v. Gillingham*, 36 Wn.2d 419, 428, 219 P.2d 92

(1950). One important factor is the nature of the plaintiff's claim or claims. *Lopp v.

Peninsula School District*, 90 Wn.2d 754, 759 (1978). Other factors include the

circumstances, if any, justifying the delay, the relief demanded, and the question of

whether the rights of other persons, such as the public, will be prejudiced by the

maintenance of the suit. *Lopp v. Peninsula School District*, 90 Wn.2d 754, 759 (1978).

Absent unusual circumstances, the doctrine of laches should not be invoked to bar

an action short of the applicable statute of limitation. *Auve v. Wenzlaff*, 162 Wash. 368,

298 P. 686 (1931); *In re Marriage of Capetillo*, 85 Wn. App. 311, 317, 932 P.2d 691

(1997). A court is generally precluded, absent highly unusual circumstances, from

imposing a shorter period under the doctrine of laches than that of the relevant statute of

limitations. *Auve v. Wenzlaff*, 162 Wash. 368 (1931); *Brost v. L.A.N.D., Inc.*, 37 Wn.

App. 372, 375, 680 P.2d 453 (1984). The defense does not contend that R.L. McFarland ran the statute of limitations.

R.L. McFarland's lawsuit vindicates the public's interest in open government. A court must invoke laches sparingly in suits brought to vindicate the public interest. *Grand Canyon Trust v. Tucson Electric Power Co.*, 391 F.3d 979, 987 (9th Cir. 2004).

The defense relies on *Lopp v. Peninsula School District*, 90 Wn.2d 754 (1978), wherein the Supreme Court held that the challengers' one-month delay after the special election for a school district bond constituted an unreasonable delay. The challenger contended that the school district failed to give proper notice of a board meeting during which the board amended the title to a bond measure submitted to the voters. Nevertheless, the court found the public to have been harmed by the delay in challenging the vote approving the bond measure. The school district had received a favorable bid on the bonds, and, if the district could not accept the bid, it would need to commence the entire bond offering procedure again. The district would also lose three months of interest income, and construction plans would be delayed. The delay in construction would further exacerbate the already congested condition of classroom facilities. Walla Walla County does not suffer any similar harm.

The defense complains that the delay in filing suit irreparably harmed it because the legislature in the meantime changed rules governing public meetings, Greg Tompkins left the WWBOC, the character of the state and national declarations of emergency

31

changed, and the recollections of witnesses dulled. Nevertheless, the defense does not identify any steps it took as a result in a delay in filing suit or any steps it would have taken if it had known that R.L. McFarland would have eventually filed his OPMA suit. The defense does not contend it would have taken any steps if McFarland's lawyer had contacted Walla Walla County earlier than ten months after January 2021. For these reasons alone, the defense of laches fails.

R.L. McFarland's counsel persistently informed Walla Walla County of its error and eventually threatened suit. Even after the threat of suit, the county made no corrections. Even after McFarland filed suit, Walla Walla County denied any mistake and refused to rectify any violation of the OPMA. This failure to take action confirms that McFarland did not lull the county into a false sense of security by reason of the lack of a lawsuit. Reliance or a change in position is required. *In re Marriage of Capetillo*, 85 Wn. App. 311, 318 (1997); *In re Marriage of Hunter*, 52 Wn. App. 265, 270-71, 758 P.2d 1019 (1988).

The defense asserts that Chairman Greg Tompkins' retirement prevents the WWBOC from retracing its steps and remedying the defect by re-enactment with the proper formalities. But the defense provides no evidence that Chairman Tompkins resigned because R.L. McFarland delayed filing a lawsuit. Tompkins signed a declaration but did not aver that he would have stayed in office longer in order to correct the defective January 7, 2021 resolution and resend the letters to Washington officials if

he had known McFarland would later sue. More importantly, Tompkins left office on December 31, 2022. After suit, Walla Walla County enjoyed three months and eight days to readopt the resolution and resend the letters, but took no remedial steps, confirming again that the county remained adamant in its position and neither relied on nor changed its position as a result of any conduct or lack of action by McFarland.

Despite having adequate time to take action at a lawful meeting before Chairman Greg Tompkins' retirement, Walla Walla County complains that it could not resend the letters after the retirement. Yet, the county cites no law that would prevent the Board today from writing the same letters and address the governor's letter to the new Washington governor. Greg Tompkins' retirement does not preclude the WWBOC from remedying any procedural defects through proper re-enactment of the January 7 resolution. When a governing body takes an otherwise proper action later invalidated for procedural reasons, that body may retrace its steps and remedy the defect by re-enactment with the proper formalities. *Spokane Education Association v. Barnes*, 83 Wn.2d 336, 378, 517 P.2d 1362 (1974); *Henry v. Town of Oakville*, 30 Wn. App. 240, 246, 633 P.2d 892 (1981).

The defense asserts that re-sending the letters would waste resources and lessen the impact of the letters because of the ending of the pandemic. The county does not quantify the waste of resources in terms of employee time or money. Of course, the county also had an opportunity to consider this possible waste of resources and lessened

impact years ago. Regardless, the defense, however, fails to recognize that any ruling declaring the January 7 letters void does not require that the WWBOC prepare or send another letter. No law requires any corrective action assuming this court declares the January letters and January 7 ordinance invalid.

The defense fails to explain how any letter sent today to the governor would have less influence than the January 7 letters particularly because the defense presents no evidence that the letter impacted the actions of former Governor Jay Inslee. We do not even know if Governor Inslee or one of his staff members received, let alone read, the letter. If the letter influenced the governor's office none, no later letter will curry less of an impact. The defense further fails to present evidence of any sway the letters had on the state legislators.

The WWBOC may still pen a letter to new Governor Rob Ferguson complaining of former Governor Inslee's measures and requesting that Ferguson reject such measures in the event of a new pandemic. The WWBOC may also continue to advocate with Walla Walla area and other legislators for legislation that would limit a governor's power at the time of another epidemic. If the WWBOC wants county voters to know that it opposed the measures on behalf of its residents, the Board may still adopt a resolution decrying the measures. The expense of such action would be nominal.

The defense contends that amendments to the OPMA notice requirements constitute a material change in circumstances. The defense, however, fails to identify the

nature of the changes or whether the changes apply to giving notice of a special meeting.

The defense does not explain why the amendments render writing another letter

impractical, let alone impossible. The amendment's purpose was to "modernize and

update the Open Public Meetings Act emergency procedures to reflect technological

advances while maintaining the act's public policy that governing body actions and

deliberations be conducted openly, balancing public safety in emergency conditions."

SUBSTITUTE H.B. 1329, 1, 67th Leg., Reg. Sess. (Wash. 2022) Session laws version:

https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/Session%20Laws/House/

1329-S.SL.pdf?q=20250331142950.

The doctrine of laches seeks to remedy a loss of defense evidence. *Davidson v.
State*, 116 Wn.2d 13, 26, 802 P.2d 1374 (1991). The Walla Walla defense fails to

identify any missing evidence resulting from a delay in R.L. McFarland's suit. Most of

the important evidence consists of documents readily available to the defense. The court

must address whether board members knew they violated the OPMA when adopting the

resolution approving of the letters. No board member, however, suggests he or she can

no longer remember his or her state of mind on January 7, 2021. Each board member has

signed a declaration repudiating any knowledge. January 2021 is not the hoary past.

OPMA Violation

The superior court ruled, on summary judgment, that the WWBOC violated the

OPMA when it adopted, at the January 7, 2021 special meeting, a resolution approving of

the letters because the advance agenda for the meeting lacked the subject matter of the

letters.  Walla Walla County does not challenge this ruling.  We agree the superior court

was correct.

RCW 42.30.080 governs special meetings of a public agency's governing body.

Sections 2 and 3 of the statute impose requirements on giving advance notice of a

meeting.

> (2) Notice of a special meeting called under subsection (1) of this
> section shall be:
> . . . .
> (b) Posted on the agency's website . . .; and
> (c) Prominently displayed at the main entrance of the agency's
> principal location....
> Such notice must be delivered or posted, as applicable, at least 24
> hours before the time of such meeting as specified in the notice.
> (3) The call and notices required under subsections (1) and (2) of
> this section shall specify the time and place of the special meeting *and the
> business to be transacted.  Final disposition shall not be taken on any other
> matter at such meetings by the governing body.*

(Emphasis added.)

As previously discussed, a preceding section of the OPMA declares invalid action

taken at a special meeting without the necessary notice.  The first paragraph of

RCW 42.30.060 declares:

> (1) No governing body of a public agency shall adopt any ordinance,
> resolution, rule, regulation, order, or directive, except in a meeting open to
> the public and then only at a meeting, the date of which is fixed by law or
> rule, or at a meeting of which *notice has been given according to the
> provisions of this chapter* [*Open Public Meetings Act*]*.  Any action taken at*

36

> *meetings failing to comply with the provisions of this subsection shall be null and void.*

(Emphasis added.) As used in the OPMA, a "public agency" includes a "county."

RCW 42.30.020(1)(b); *Citizens Alliance for Property Rights Legal Fund v. San Juan County*, 181 Wn. App. 538, 544, 326 P.3d 73 (2014), *aff'd*, 184 Wn.2d 428, 359 P.3d 753 (2015). The act defines an "action."

> "Action" means the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions. "Final action" means a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance.

RCW 42.30.020(3).

The Washington Supreme Court, in *In re Recall of Bird*, 1 Wn.3d 419, 527 P.3d 1141 (2023), also deliberated about RCW 42.30.080's demand of an advance notice of a government body special meeting, which notice must disclose agenda topics. The special meeting notice must "specify . . . the business to be transacted." RCW 42.30.080(3). The high court ruled that the listed agenda item "Local Control" did not provide notice of business to be transacted. A member of the public could interpret the agenda subject's vague nomenclature to describe limitless topics. Because of the violation of

RCW 42.30.080, the OPMA barred the Richland School District from taking action at the

special meeting and nullified a vote to lift a requirement that students wear masks. In

turn, citizens could recall from office those participating in adopting the resolution.

Civil Penalties

The superior court summarily dismissed R.L. McFarland's claim for civil penalties

brought against individual WWBOC members because of a lack of evidence that any

board member knew that he or she violated the OPMA. We must decide whether

McFarland presented a genuine issue of material fact as to board members' knowledge in

order to defeat the members' summary judgment motion. Because of some

circumstantial evidence and because of the difficulty to contradict a party's declaration of

his or her state of mind, we rule that McFarland presented sufficient evidence to raise a

question of fact.

The governing statute, RCW 42.30.120, states:

> (1) Each member of the governing body who attends a meeting of such governing body where action is taken in violation of any provision of this chapter applicable to him or her, with *knowledge of the fact that the meeting is in violation thereof*, shall be subject to personal liability in the form of a civil penalty in the amount of five hundred dollars for the first violation.
> . . . .
> (3) The civil penalty shall be assessed by a judge of the superior court and an action to enforce this penalty may be brought by any person.

(Emphasis added.) As outlined in RCW 42.30.120, to escape summary dismissal of an

OPMA claim, the plaintiff must produce evidence showing (1) members of a governing

38

body (2) held a meeting of that body (3) during which that body took action in violation of the OPMA, and (4) the members of that body had knowledge that the meeting violated the statute. *Eugster v. City of Spokane*, 118 Wn. App. 383, 424, 76 P.3d 741 (2003). Thus, a successful suit for civil penalties, under RCW 42.30.120, requires a threshold showing by the plaintiff that the member of the governing body being sued knew the meeting wherein action taken violated the OPMA. *Citizens Alliance for Property Rights Legal Fund v. San Juan County*, 181 Wn. App. 538, 543, 326 P.3d 730 (2014), *aff'd*, 184 Wn.2d 428, 359 P.3d 753 (2015).

R.L. McFarland concedes that board members must actually know of the OPMA violation before being assessed civil penalties. He insists, however, that evidence establishes, or at least a question of fact exists, that the three Walla Walla County members of the Board of Commissioners knew of the violation. All three board members deny any knowledge of the violation of the special meeting notice statute. We must resolve whether McFarland and this court must accept the word of the county commissioners. In doing so, we peruse Washington OPMA cases and principles of summary judgment jurisprudence.

In *Cathcart v. Andersen*, 10 Wn. App. 429, 517 P.2d 980 (1974), *aff'd*, 85 Wn.2d, 530 P.2d 313 (1975), students of the University of Washington sued the school's dean and faculty because the faculty conducted closed meetings. The court ruled that, under the OPMA, the faculty must convene their meetings in public. The court denied civil

penalties against faculty members, however, because the attorney general advised faculty members that closed meetings did not violate the OPMA. Uncontroverted affidavits established that the dean and faculty accepted this advice. Thus, despite the violation, no genuine issue of fact and final disposition prevented summary judgment. *In re Recall of Boldt*, 187 Wn.2d 542, 386 P.3d 1104 (2017), the court also ruled in favor of board members in a claim seeking civil penalties because the officials relied on legal advice. WWBOC members presented no evidence that they relied on attorney advice.

*Wood v. Battle Ground School District*, 107 Wn. App. 550, 27 P.3d 1208 (2001), saw a different outcome. School district board members discussed business by e-mail in violation of the OPMA. In an action to recover civil penalties, the board members contended they did not know they violated the law particularly because no Washington court had addressed whether e-mail communications could constitute a meeting under the act. Despite this disavowal, the Court of Appeals reversed a summary judgment dismissal granted the board members. The writers of some of the e-mails expressed concern about violating the OPMA. One e-mail stated that the state Attorney General had expressed concerns relative to school board members being on school networks because of the chance of discussing school issues with each other and in violation of the OPMA. Despite their denials, reasonable persons viewing the evidence could differ as to whether the defendants knew their e-mails violated the OPMA.

In *Zink v. City of Mesa*, 17 Wn. App. 2d 701 (2021), the city violated the OPMA

when it evicted Donna Zink from a city council meeting after she refused to cease

videotaping the meeting.  The trial court held that none of the city council members had

knowledge of the violation because none had received training.  This court affirmed.

R.L. McFarland argues that *Zink* supports a ruling that a plaintiff establishes knowledge

of an OPMA violation if the government official underwent training.  We do not read

*Zink* that broadly, but recognize training as a factor to consider.  *Zink v. City of Mesa*

does not stand for the converse—that having attended training necessarily means that a

government body official knows of a violation when the violation occurs.

We already discussed the factual background behind *In re Recall of Bird*, 1 Wn.3d

419 (2023).  Citizens sued for approval to recall school board members, not for civil

penalties.  In a sentence, in the opinion, the Supreme Court wrote, however:

> RSDB policy requires that the RSDB members be trained on the
> OPMA—therefore, RSDB members knew the OPMA's requirements.
> RSD, Bd. of Dirs. Pol'y No. 1805, *Open Government Trainings* (July 22,
> 2014).

*In re Recall of Bird*, 1 Wn.3d 419, 431 (2023).  The court added that one of the board

members alerted all members to the notice defect before the board voted on a resolution.

We have yet to present the obligatory recitation of summary judgment rules.

When ruling on standing, mootness, laches, and a violation of OPMA, this court could

rule as a matter of law because of the lack of any dispute as to the evidence. The

application of summary judgment principles now looms critical.

This court reviews de novo an order granting summary judgment. *Lunsford v.
Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 270, 208 P.3d 1092 (2009). When
reviewing a summary judgment order, this court engages in the same inquiry as the trial
court, viewing the facts and all reasonable inferences in the light most favorable to the
nonmoving party. *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 270 (2009).
Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law." CR 56(c). A material fact is one on which the outcome of
the litigation depends in whole or in part. *Atherton Condominium Apartment-Owners
Association Board of Directors v. Blume Development Co.*, 115 Wn.2d 506, 516, 799
P.2d 250 (1990).

A party moving for summary judgment can meet its burden by pointing out to the
trial court that the nonmoving party lacks sufficient evidence to support its case. *Guile v.
Ballard Community Hospital*, 70 Wn. App. 18, 21, 851 P.2d 689 (1993). After the
moving party meets its initial burden to show an absence of material fact, the inquiry
shifts to the party with the burden of proof at trial. *Young v. Key Pharmaceuticals, Inc.*,
112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party is a defendant and meets

this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225 (1989). If, at this point, the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, then the trial court should grant the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the burden of establishing that no genuine issue of material fact exists and that judgment as a matter of law is warranted. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Barber v. Bankers Life & Casualty Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972). The reviewing body may not weigh the evidence, assess credibility, consider the likelihood that the evidence will prove true, or otherwise resolve issues of material fact. *TracFone, Inc. v. City of Renton*, 30 Wn. App. 2d 870, 876, 547 P.3d 902, *review denied*, 559 P.3d 494 (2024).

Each board members' knowledge of whether he or she knew of the OPMA violation lies singularly in their respective minds. When essential information exists exclusively within the knowledge of one of the parties, the law generally imposes the burden on the party possessed of that knowledge to make the proof. *Cedar River Water & Sewer District v. King County*, 178 Wn.2d 763, 779, 315 P.3d 1065 (2013). We discern no reason to distinguish between knowledge and lack of knowledge, for purposes

of the assignment of the burden of proof, because both reside solely in the custody of the other party. This rule of evidence should lessen a nonmoving party's burden when attempting to defeat a summary judgment motion based on the opposing party's declaration of lack of knowledge of the significance of an event.

We are reluctant to grant summary judgment when material facts are particularly within the knowledge of the moving party. *Riley v. Andres*, 107 Wn. App. 391, 395, 27 P.3d 618 (2001). In such cases, the matter should proceed to trial in order that the opponent may be allowed to disprove such facts by cross-examination and by the demeanor of the moving party while testifying. *Arnold v. Saberhagen Holdings, Inc.*, 157 Wn. App. 649, 662, 240 P.3d 162 (2010).

Summary judgment may be inappropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice. *Coit v. Nappi*, 248 Md. App. 44, 53, 239 A.3d 824 (2020); *Haynie v. Twin Oaks Nursing Home, Inc.*, 17-192 (La. App. 5 Cir. 11/15/17), 232 So. 3d 74. A party's knowledge, like other state of mind inquiries, is elusive and rarely is established by other than circumstantial evidence. *Blare v. Husky Injection Molding Systems Boston, Inc.*, 419 Mass. 437, 439, 646 N.E.2d 111 (1995). Thus, the determination of what a person knows or should have known under a specific factual situation is typically ill-suited for resolution by summary judgment. *Vitali v. Reit Management & Research, LLC*, 88 Mass. App. Ct. 99, 105, 36 N.E.3d 64 (2015).

Conclusory, self-serving affidavits about a lack of knowledge are insufficient to the absence of knowledge for purposes of a summary judgment motion. *Freeland v. Erie County*, 204 A.D.3d 1465, 1467, 167 N.Y.S.3d 683 (2022). Self-serving affidavits raise questions of credibility for the finder of fact, not the court, to resolve. *Michael P. v. Dombroski*, 211 A.D.3d 1469, 1472, 182 N.Y.S.3d 828 (2022).

This court astutely noted:

> Sometimes a material "fact" is particularly within the knowledge of the moving party and the nonmoving party cannot directly contradict it. In those situations, the nonmoving party may create a genuine issue of material fact by impeaching the moving party's witness or witnesses. In those situations where a proponent's "fact" reasonably might be disbelieved, it is advisable that the cause proceed to trial in order that the opponent ... be allowed to disprove such fact by cross-examination and by the demeanor of the witness while testifying.

*Acosta v. City of Mabton*, 2 Wn. App. 2d 131, 138, 408 P.3d 1095 (2018).

The superior court relied on the credibility of the three county commissioners when they declared they lacked knowledge of the OPMA breach. This observation, however, does not end our analysis. Despite law suggesting the grant of summary judgment based solely on a subjective assertion of a party is inappropriate, the Washington Supreme Court affirmed summary judgment in favor of government body officials based on affidavit denial of knowledge of a violation of the OPMA. If no circumstantial evidence contradicted the lack of knowledge proclaimed by the county

commissioners, we would affirm the summary judgment order. But the record presents

some inconsistent indicators.

WWBOC members possess motivation to deny knowledge because of the

exposure to personal liability. We recognize that R.L. McFarland could have taken

depositions of the board members. Still, instead of testifying in court and being subject

to cross-examination, each board member signed a declaration with identical wording. In

other words, they did not testify in their own words. We recognize that a government

official's training does not automatically equate to the showing of a knowing violation of

the OPMA. Nevertheless, all three WWBOC members underwent training, and that

training included the requirements for conducting a special meeting. On January 6,

McFarland wrote an e-mail to the WWBOC's secretary that highlighted the vagaries of

the special meeting notice and particularly the failure to list the subject matter of the

letters to the governor and legislators. Chairman Greg Tompkins responded to

McFarland's e-mail. A reasonable inference from this response is that Tompkins read

McFarland's earlier e-mail

Reasonable Attorney Fees

R.L. McFarland argues that a finding of a violation entitles him to obtain attorney

fees. We agree.

The governing statute, RCW 42.30.120(4), declares:

> Any person who prevails against a public agency *in any action in the courts for a violation of this chapter* [RCW 42.30] shall be awarded all costs, including reasonable attorneys' fees, incurred in connection with such legal action.

(Emphasis added.)  The statute awards fees to a person who successfully establishes a violation of any section in the OPMA.  We have ruled that McFarland prevailed in his claim under RCW 42.30.060 and .080 and in his request to nullify the WWBOC resolution and January letters.  This court may direct the superior court to award reasonable attorney fees and costs for time spent on the appeal.  *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 347, 54 P.3d 665 (2002).

We remand to the superior court for a trial on R.L. McFarland's claim for civil penalties.  Because of further proceedings in the superior court, we direct the superior court to award McFarland a sum for reasonable attorney fees and costs incurred in pursuing the claim to nullify the resolution and letters, both at the superior court and appeals court level.  The court should also award McFarland fees, both on appeal and at the superior court level, attended to the pursuit of civil penalties if he succeeds on this claim also.

## CONCLUSION

We reverse the superior court's grant of summary judgment in favor of Walla Walla County and individual members of the WWBOC.  We grant summary judgment

47

in favor of R.L. McFarland on his claim to nullify the January letters and the resolution authorizing the letters. We remand to the superior court to enter an order nullifying the WWBOC action and to determine what, if any, other relief is appropriate to effectuate the order. We also remand to the superior court and for trial McFarland's request for civil penalties. On remand, the superior court should award McFarland reasonable attorney fees and costs for efforts expended to nullify the WWBOC action and, should McFarland prevail on his claim for civil penalties, award reasonable attorney fees and costs expended to prevail on his second cause of action.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Hazel, J.P.T.[†]

---

[†] Tony Hazel, an active judge of a court of general jurisdiction, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).